[Civ. No. 3262. Fourth Dist. Oct. 23, 1944.]

BESSIE L. CATHCART, Appellant, v. SECURITY TITLE INSURANCE & GUARANTEE COMPANY (a Corporation) et al., Respondents.

Jesse W. Curtis, Jr., for Appellant.

Fred A. Wilson for Respondents.

BARNARD, P. J.—This is an appeal from an order after judgment removing an arbitrator and appointing a substitute arbitrator.

The plaintiff owned a three-fourths interest in 280 acres of mountain land, the remaining interest being owned by the Redlands Security Company. In 1931, she gave the Redlands Security Company a note for $18,000, secured by a deed of trust on her interest in the property. These parties conveyed a portion of this property, including a strip 175 feet in width, to the defendant water district. The validity of this conveyance was contested in a prior action. (*Cathcart* v. *Gregory,* 45 Cal.App.2d 179 [113 P.2d 894].)

While that action was pending these parties conveyed a right of way for road purposes over portions of this property to the county of San Bernardino. As the title to part of the property was then in litigation, these parties entered into a written agreement dated April 23, 1940, which will be re-

ferred to as "Exhibit E." This agreement provided that the Redlands Security Company should compensate the plaintiff for any interest in the land conveyed for road purposes which she might be awarded in the pending litigation, that the amount of such compensation should be determined by a board of three arbitrators chosen in the usual manner, and that the amount as thus determined should be applied as a payment upon the $18,000 note.

After the judgment in the prior action became final the plaintiff brought this action in equity seeking to have the prior judgment declared null and void and asking, among other things, that any sale under the deed of trust be enjoined "pending the determination by a board of arbitrators of the compensation to which plaintiff is entitled by reason of the written agreement, . . ." (Exhibit E.)

After a trial in this equitable action the court found in favor of the defendants and on January 14, 1943, entered a judgment in their favor. Among other things, this judgment provided that within fifteen days after notice of the entry thereof the plaintiff should appoint an arbitrator in accordance with the provisions of the agreement (Exhibit E) to act with one Frank L. Whitelock, who had been appointed an arbitrator by the Redlands Security Company and whose appointment was thereby confirmed; that within fifteen days thereafter these two arbitrators should appoint a third; that within thirty days thereafter the three arbitrators should determine and fix the value of the plaintiff's interest in the land in question; that the sum so fixed should be applied in reduction of the amount due on the $18,000 note; and that thereupon any preliminary injunction should be dissolved and the trustee under the deed of trust might proceed with the sale of the property.

No contention is made that all proper notices were not given and no further reference thereto will be made. On March 16, 1943, the plaintiff appointed Fred Draggoo as such arbitrator. He took no action, apparently because he was inducted into the armed services. On April 27, 1943, the plaintiff filed notice of appointment by her of R. T. Evans as arbitrator in place of Draggoo. On the same day the court made an order removing Draggoo as arbitrator and confirming the appointment of Evans.

On July 1, 1943, a citation was issued directing the plain-

tiff and Evans to show cause on July 26, 1943, why an order should not be made removing Evans as arbitrator and appointing someone in his place. This matter was heard on July 31, 1943, and on August 2, 1943, the court made an order removing Evans as arbitrator and appointing one Harry Eastwood as arbitrator in his place. From that order the plaintiff has appealed.

The appellant's main contention is that the court erred in attempting to compel a specific performance of the arbitration agreement. It is argued that it was held in *Rives-Strong Bldg., Inc.* v. *Bank of America*, 50 Cal.App.2d 810 [123 P.2d 942], and in certain earlier cases which are cited, that an agreement to submit only the question of the value of real property to third persons is not a submission to arbitration but merely an arrangement for an appraisal, that such an agreement will not be specifically enforced, that this was not an agreement for an arbitration within the contemplation of part 3, title 10 of the Code of Civil Procedure, that section 1283 of that code is therefore not applicable here, and that it follows that the court had no authority to appoint an arbitrator in place of Mr. Evans who had refused or neglected to act up to the time of his removal. The cases relied on involved agreements entered into before 1927, and at times when section 1281 limited such contracts to controversies "which might be the subject of a civil action between them." In 1927, section 1281 was amended and other statutes were adopted greatly enlarging the scope of such arbitration agreements and providing for at least a part of the procedure for carrying them into effect. Section 1280 now provides that a written contract to settle by arbitration a controversy thereafter arising out of the contract or an agreement to submit an existing controversy to arbitration pursuant to section 1281, shall be valid and enforceable, with certain exceptions not material here. Section 1281 provides that two or more persons may submit in writing to arbitration any controversy existing between them which arises out of a contract, with certain other matters not material here. Section 1283, in addition to other matters, provides that where for any reason there is a failure or refusal of any arbitrator to fulfill his duties the court may, upon application of either party, appoint an arbitrator to act in accordance with the terms of the agreement.

At the time this agreement (Exhibit E) was entered into there can be no question that a controversy existed between the parties. They were disputing about at least two contracts, were then engaged in litigation over these and other matters, and the agreement was made to protect any rights of the appellant pending the completion of that litigation. Not only does this agreement seem to come within the scope of the arbitration statutes as thus revamped in 1927, but the matter was brought in issue and submitted to the court in this equitable action by the parties themselves.

In her complaint the appellant set up the arbitration agreement (Exhibit E) and alleged that no arbitrators had been selected and no award had been made as therein provided for, that notwithstanding the existence of that agreement the trustee proposed to and unless enjoined would sell the property under the deed of trust, and that a controversy existed as to whether the time for arbitration under that agreement had arrived. She prayed, among other things, that the defendants be enjoined from selling the property under the deed of trust until the amount due her was determined in accordance with the agreement and credited upon her debt, and that the court determine and declare the rights and duties of the parties under the agreement (Exhibit E). In a cross-complaint a part of the respondents set up this same agreement and alleged that they had appointed an arbitrator and that the appellant had failed and refused to appoint one, and prayed that she be required to do so, that the two arbitrators be required to appoint a third, and that the three be required to fix the compensation justly due to the appellant in accordance with the terms of the agreement. The court found in favor of the respondents and in its judgment ordered the arbitration to proceed as provided for in the agreement. The appellant submitted the entire matter to the court, in effect asked the court to enforce the arbitration agreement, the court acted upon the issues presented, and the appellant is in no position to complain that her request was granted. The order appealed from was made for the purpose of carrying out and enforcing a judgment already entered in this equitable action and we think that under any point of view it was well within the court's powers. If appellant's contention in this regard were to be sustained she could defeat the purpose of the judgment by merely refusing to appoint an arbitrator who would

act, since the land could not be sold until the amount of the debt was determined.

The appellant further argues that the original judgment entered in this action which has become final is conclusive and is a bar to the making of the order appealed from. It is argued in this connection that in that judgment the court appointed one Harry A. Hickman as commissioner and authorized him to do anything which might be necessary because of the failure of the parties to act, that if there was such a failure to act the said Hickman should have appointed the arbitrator, and that it follows that the court was without authority to do so at the time this order was made.

In the judgment, after providing for and ordering the carrying out of the arbitration agreement (Exhibit E), the court inserted a paragraph appointing Harry A. Hickman as a commissioner authorizing him, in case of the default or refusal of any party to act, to make, execute and deliver any document or to take any action in the same manner as such defaulting party had been directed to do. That the court intended by this paragraph to authorize the said Hickman to appoint any arbitrators in case the parties failed to do so may well be questioned. In any event, the judgment purports to authorize this commissioner to act only in case of the default of one of the parties. There was no such default here, the matter in question being the neglect to act on the part of an arbitrator already appointed by the appellant. The powers of such a commissioner are limited to the performance of ministerial acts. The court could not delegate to a commissioner the power to remove an arbitrator appointed by one of the parties and, regardless of any powers conferred upon the commissioner, the court still retained the power to act on any matter directly and properly presented to it. We find nothing in the original judgment in this action which would bar the court from passing upon the issues thereafter raised and presented.

Finally, the appellant contends that the evidence does not justify the order removing the arbitrator appointed by her. By its terms the main operation of the judgment was delayed until the completion of the arbitration agreed upon and ordered, and for obvious reasons limited times were provided for the various steps of the arbitration proceeding. Mr. Evans was appointed an arbitrator on April 27, 1943, and

had not met with the other arbitrator for the purpose of appointing a third arbitrator when a citation was issued on July 1, 1943. In fact, nothing had been done up to July 31, 1943, when the matter was heard. It appears from the affidavits that Mr. Whitelock and the attorney for the respondents had written at least three letters to Mr. Evans and that he had never replied to any of them. In his affidavit Mr. Evans alleged that he was out of town a great deal, that he was very busy with his own business, and that he made one attempt to contact Mr. Whitelock on June 11, 1943. The order appealed from was made nearly five months after the service of formal notice and demand for the appointment of an arbitrator had been served on the appellant and three months after Evans was appointed and confirmed. No reasonable excuse was offered for his failure to cooperate in choosing a third arbitrator, although the other arbitrator had suggested several persons to him. If it can be said there is some conflict in the evidence the matter was one for the trial court and the evidence supports its finding and conclusion that there had been an unreasonable delay in carrying out the provisions and directions of the judgment.

The order appealed from is affirmed.

Marks, J., and Griffin, J., concurred.