[No. B163771. Second Dist., Div. Four. Jan. 6, 2006.]

BRIAN K. BOSWORTH et al., Plaintiffs and Respondents, v.
ROBERT S. WHITMORE, as Bankruptcy Trustee, etc., Defendant and
Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

COUNSEL

Horvitz & Levy, David M. Axelrad and Julie L. Woods for Defendant and Appellant.

Castro & Associates, Joel B. Castro, Ruth Scott; Greines, Martin, Stein & Richland, Kent L. Richland and Edward L. Xanders for Plaintiffs and Respondents.

OPINION

**WILLHITE, J.—**

## INTRODUCTION

Robert S. Whitmore, chapter 7 trustee for the estate of defendant Grover Joseph Harvey McCoy, prosecutes this appeal from a judgment confirming an arbitration award against McCoy and codefendant McCoy Creative Contractors and Interiors, Inc.[1] The judgment found McCoy and the corporation liable to plaintiffs Brian K. and Katherine Bosworth for damages of $2,067.860.43, and attorney fees and costs of $494,829.43.

---

[1] The judgment was entered on October 18, 2002, against both McCoy and the corporation. That day, the corporation filed for chapter 7 bankruptcy. On December 13, 2002, McCoy alone filed a notice of appeal. On January 23, 2003, he, too, filed for chapter 7 bankruptcy. Later, the bankruptcy court granted him relief from the automatic stay to pursue this appeal. We granted the motion of McCoy's bankruptcy trustee, Robert S. Whitmore, to be substituted as appellant in McCoy's place. Hence, technically speaking, it is the trustee who is prosecuting this appeal. Nonetheless, for clarity and ease of reference, we shall continue to refer to McCoy.

We hold that absent a completion date set by agreement, Code of Civil Procedure section 1283.8 gives the trial court the authority, on petition by a party to the arbitration, to set a date by which the arbitration proceeding must be concluded.[2] Although the better practice is to set the date when the case is first ordered to arbitration, the court has discretion to entertain a petition to set a completion date while the arbitration is in progress. To the extent the decisions in *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482 [35 Cal.Rptr.2d 4] (*Titan/Value*), and *Blake v. Ecker* (2001) 93 Cal.App.4th 728 [113 Cal.Rptr.2d 422] (*Blake*), disapproved on another ground in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107, footnote 5 [29 Cal.Rptr.3d 249, 112 P.3d 636], suggest that the trial court cannot set an arbitration deadline, we respectfully disagree. Neither decision discusses the authority granted by section 1283.8.

In the instant case, although the trial court properly set a completion date, we conclude that the court abused its discretion when it later removed the arbitrator who had been handling the case for almost two years. On the record presented, the arbitrator's reluctance to promise completion by the court's deadline did not constitute a "fail[ure] to act" under section 1281.6 so as to justify his removal. Therefore, the court's appointment of a successor arbitrator was unauthorized, and the successor arbitrator's award was void. Consequently, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Contract and Its Arbitration Clause*

In May 1998, plaintiffs Brian and Katherine Bosworth entered a contract with defendant McCoy Creative Contractors and Interiors, Inc. to construct a home in Malibu, California, for approximately $1,670,000. As president, defendant Joseph McCoy signed the agreement on behalf of the corporation. The contract contained an arbitration clause that provided in relevant part: "Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

In December 1998, the parties retained Builders Disbursements, Inc. (BDI) to distribute the proceeds from the Bosworths' $1.8 million loan as the work

---

[2] All undesignated statutory references are to the Code of Civil Procedure.

progressed. The parties' contract with BDI also contained an arbitration clause requiring any disputes to be arbitrated in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA).

## 2. The Lawsuit

In November 1999, the Bosworths filed suit against McCoy and his corporation for, inter alia, breach of contract and fraud, and alleged that McCoy was the alter ego of the corporation. The Bosworths claimed that the unfinished home had not been constructed in accord with the plans and specifications and that McCoy had breached the contract by accepting disbursement of funds before the work was completed. The Bosworths further alleged that McCoy had failed to refund money to the Bosworths that they had paid him before the funding of their construction loan.

In January 2000, McCoy and the corporation filed a petition to compel arbitration and stay the lawsuit. (§§ 1281.2 & 1281.4.) At a hearing conducted on February 17, 2000, the parties stipulated to submit "all substantive claims" to binding arbitration (except for the alter ego issue) pursuant to the arbitration agreement, and also stipulated to a stay of the Bosworths' action. McCoy reserved the right to seek to compel arbitration of the alter ego claim. Based on the stipulation, the court placed the petition to compel arbitration off calendar as moot.

## 3. Commencement of Arbitration Proceedings

On March 6, 2000, the Bosworths submitted an arbitration demand to the AAA. They later amended their demand to add BDI as a party to the arbitration, claiming that BDI had negligently disbursed the loan proceeds to McCoy. In the meantime, on May 24, 2000, the AAA appointed Alan Dymond as arbitrator. On June 16, 2000, Dymond conducted a telephonic preliminary hearing in which he directed the Bosworths to complete a list of construction defects and damages "as soon as possible."

Approximately three months thereafter, on September 21, 2000, Dymond held a hearing at which he issued several orders. He directed the Bosworths to provide their final defect list, damage estimate, and expert reports by October 15, 2000. He also ordered them to permit McCoy to inspect the home. He directed McCoy to serve demands on any additional parties by October 30, and to produce various documents.

Despite the October 15, 2000 deadline, the Bosworths did not provide the required defect list, damage estimate, and expert reports until February 28, 2001. By April 16, 2001, McCoy and the corporation filed counterclaims against various subcontractors allegedly responsible for the Bosworths' claimed defects in construction.

Approximately one month later (May 18, 2001), Dymond scheduled the arbitration to begin on September 4, 2001. However, although the subcontractors were required to appear on or before June 25, 2001, the AAA failed to properly notify them. Consequently, on August 10, 2001, Dymond vacated the September 4th hearing date, and continued the arbitration to November 8, 2001, to allow proper notice to the subcontractors. The Bosworths, McCoy and the corporation consented to the continuance.

On November 6, 2001, Dymond cancelled the hearing because McCoy, the corporation, and several of its subcontractors did not pay their arbitration fees. By the first week of January 2002, however, the fees were paid.

4. *The Bosworths Seek Judicial Intervention to Set a Completion Date*

On January 14, 2002, the Bosworths moved ex parte for an order requiring the case "to be arbitrated or tried before March 31, 2002." In their motion, the Bosworths alleged that their lender had already twice extended the due date on their construction loan, and the delay in completing the arbitration jeopardized their ability to finance construction. The loan due date was now March 31, 2002, and if the Bosworths did not obtain permanent financing by that date, the lender would consider the loan in default and commence foreclosure proceedings. The Bosworths alleged they could not "secure normal home financing because the house is not complete and a Certificate of Occupancy cannot be issued." Accordingly, they claimed they would loose their "very unique and personally designed home" unless proceedings were completed by March 31, 2002.[3]

At the January 14 hearing on the Bosworths' ex parte motion, the court announced that it would "set the arbitration completion date [as] March 31st." Counsel for McCoy and the corporation noted that his clients were "inter-

---

[3] Although on appeal the Bosworths contend that McCoy intentionally sought to delay the arbitration, they did not raise that argument in their motion to set an arbitration completion date. They simply noted that the failure to pay the arbitration fees had resulted in cancellation of the November 2001 hearing. Moreover, they did not attribute the delay in completing the arbitration to any one in particular, including McCoy.

ested as well in a speedy resolution." He explained, however, that there had been a delay in arranging McCoy's inspection of the home. Brian Bosworth insisted on being present, although an injunction was in effect barring him being within 100 feet of McCoy, and Bosworth had recently been found in contempt for violating that injunction. The parties then agreed to arrange a site inspection, and the trial court reaffirmed an "arbitration completion date" of March 31, 2002.

## 5. *The Bosworths Seek Appointment of a New Arbitrator*

On January 29, 2002, two weeks after the setting of a completion date, the Bosworths moved ex parte for appointment of a new arbitrator. According to the Bosworths, the arbitration would take at least 15 working days. The Bosworths further claimed that in telephonic conferences Dymond had stated that he "was unable to represent that the arbitration would be completed by March 31. Instead, he stated he could only make a good faith effort to complete as much as possible by March 31." The Bosworths therefore sought appointment of one of two arbitrators they had contacted, each of whom could complete the arbitration hearing by March 31. One was George Calkins, a member of the AAA panel of construction arbitrators. The other was retired Judge David Perez, who was employed by the Judicial Arbitration and Mediation Services (JAMS). The Bosworths expressed no preference for either arbitrator, and left the choice to the defense or the court.

At the January 29 hearing on the ex parte motion, counsel for McCoy and the corporation argued that the parties' contract required the Bosworths to "approach [the] AAA" and use AAA rules to select a successor arbitrator.[4] Counsel stated that McCoy and the corporation would not agree to either Calkins or Judge Perez, but instead "want[ed] the arbitrator chosen pursuant to AAA rules and under their contract."

The court continued the hearing to February 1, 2002, to permit the Bosworths to obtain a written statement from Dymond concerning his ability to complete the arbitration. Dymond submitted a statement explaining that "to the best of my ability and matters within my control, the evidentiary hearings" involving the Bosworths, McCoy, the corporation, and the subcon-

---

[4] We granted the Bosworths' motion to take judicial notice of the applicable Construction Industry Arbitration Rules of the AAA in effect at the time of the arbitration. Rule R-22, subdivision (a), provides: "If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules."

tractors "will be complete" by March 31, 2002. However, if BDI participated, then Dymond could "make no representations" that he could complete the arbitration by the March 31 deadline.

At the hearing on February 1, the Bosworths asserted that BDI's participation in the arbitration was necessary. Opposing the Bosworths' attempt to remove Dymond, McCoy and the corporation argued that under *Titan/Value,* *supra,* 29 Cal.App.4th 482, the trial court had no authority to set a deadline to complete the arbitration. They therefore asked the court to vacate its January 14 order setting an arbitration completion date of March 31. They also reiterated their earlier argument that the Bosworths were required to comply with AAA rules in seeking relief.

The court declined to vacate the arbitration completion date. It also found that Dymond's inability to guarantee completion by the court-ordered deadline constituted a failure to act under section 1281.6, justifying the appointment of a new arbitrator. The court overruled the objection by McCoy and the corporation that the arbitration agreement required selection of an arbitrator from the AAA pursuant to AAA rules. Invoking the appointment procedure of section 1281.6, the court directed each side to present a list of five candidates within five days.

Filed on February 6, the Bosworths' list resubmitted Calkins and Judge Perez, and added one other choice, Thomas Craigo. McCoy and the corporation declined to submit any names. Instead, they raised a "continuing objection" to the trial court's appointment of a new arbitrator.[5]

6. *The Court Appoints Judge Perez*

On February 7, 2002, the trial court selected Judge Perez to arbitrate the cause, and one week later Judge Perez scheduled a prearbitration hearing for

---

[5] Concurrently, they filed a petition for a writ of mandate in this court to overturn the trial court's orders setting a March 31 completion date and removing Dymond as arbitrator. We summarily denied the petition on February 26. Our order stated, in pertinent part: "The petition is denied for failure to demonstrate entitlement to extraordinary relief. [¶] The record shows that petitioners' unexplained failure to pay their share of the arbitrator's fees when due delayed the arbitration proceedings to the detriment of real parties in interest from November 6, 2001 through at least January 3, 2002. It thus appears that petitioners have acted with unclean hands in the arbitration proceedings and are not entitled to writ relief which would inequitably permit them to benefit from such conduct. [Citations.]"

Our summary denial of the petition, including its statement of reasons, is not law of the case on this appeal. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 895 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

February 20. On February 19, counsel for McCoy and the corporation wrote to JAMS objecting to Judge Perez's appointment as arbitrator, and declining to participate in the proceeding. Counsel explained that the arbitration agreement required the Bosworths and the court to follow the AAA process of selecting and replacing arbitrators, and that Judge Perez and JAMS had "no standing or authority to proceed in this matter."

On February 20, without the appearance of McCoy and the corporation, Judge Perez scheduled commencement of arbitration for March 11. McCoy and the corporation filed a notice to disqualify Judge Perez under section 1281.91, subdivisions (a) and (b)(2). However, the trial court granted the Bosworths' request to strike the disqualification notice, concluding that McCoy and the corporation were guilty of laches.[6]

### 7. *Judge Perez Conducts the Arbitration*

The arbitration hearing began on March 11, 2002. Neither McCoy nor the corporation participated. BDI also declined to participate. The Bosworths called 10 witnesses (including six experts), and submitted documentary evidence. On March 26, 2002, Judge Perez filed his award in favor of the Bosworths, finding McCoy and the corporation liable for $2,067,860.43 in damages and $494,829.43 in attorney fees, expert costs and other litigation expenses. He also found BDI jointly and severally liable for $1,177,162.45.

### 8. *Judicial Confirmation of the Arbitration Award*

The Bosworths petitioned the superior court to confirm the arbitration award. McCoy and the corporation petitioned to vacate it.

Because BDI had filed a section 170.6 challenge to the original judge, the matter was transferred to a successor judge. The court confirmed the arbitration award and denied the defense petition to vacate it. On the issue of whether Dymond was properly removed and replaced by Judge Perez, the court found the earlier ruling binding. The court also found, however, that "this matter has been before AAA for almost two years and foreclosure proceedings were imminent. The AAA arbitrator [Dymond] advised the court that he would be unable to complete the matter by March 31, 2002. . . . The conduct of the AAA arbitrator establishes that the arbitrator failed to act."

McCoy objected that the trial court had never decided whether he was the alter ego of the corporation. Nonetheless, the court entered judgment against both McCoy and the corporation. This appeal by McCoy followed. (See fn. 1, *ante*.)

---

[6] McCoy and the corporation challenged the order by seeking a writ of mandate from this court. On March 11, 2002, we summarily denied the petition.

## DISCUSSION

### I. McCoy Neither Consented to the Setting of an Arbitration Completion Date, Nor Forfeited the Right to Object*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Section 1283.8 Authorized the Trial Court to Set An Arbitration Completion Date

Section 1283.8 provides in relevant part: "The [arbitration] award shall be made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court orders on petition of a party to the arbitration."[8]

The grant of authority to direct that "[t]he award shall be made . . . within such time as the court orders" is reasonably susceptible to at least two interpretations. Perhaps, as McCoy argues, it means only that the trial court has the power to set a date after completion of the evidentiary hearing within which the arbitrator must render his award. If so, then the trial court has no "jurisdiction" to set a deadline by which the entire arbitration proceeding must be concluded.[9] On the other hand, perhaps the Bosworths' interpretation is correct: by referring to the time within which the award must be made, the statute gives the trial court the power to regulate the duration of the arbitration proceeding itself.

---

*See footnote, *ante*, page 536.

[8] Section 1283.8 reads in full: "The [arbitration] award shall be made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court orders on petition of a party to the arbitration. The parties to the arbitration may extend the time either before or after the expiration thereof. A party to the arbitration waives the objection that an award was not made within the time required unless he gives the arbitrators written notice of his objection prior to the service of a signed copy of the award on him."

[9] We construe McCoy's argument that the trial court lacked "jurisdiction" to be that the trial court lacked the power or authority to make certain orders, not that the court lacked subject matter jurisdiction. "The principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it. In contrast, a court acts in excess of jurisdiction where, even though it has subject matter jurisdiction, it has no jurisdiction or power to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. [Citation.]" (*Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 680 [71 Cal.Rptr.2d 771].) Certainly, in this case the trial court had subject matter jurisdiction. The Bosworths filed suit against McCoy and his corporation who responded by filing a petition to compel arbitration. In that light, McCoy's true claim is that the trial court lacked the power to grant relief to the Bosworths because the matter had been submitted to arbitration.

To resolve the ambiguity, we examine the legislative history to ascertain the intent supporting the enactment of section 1283.8. (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].) Reviewing that history, we conclude that section 1283.8 was intended to authorize the trial court to fix a deadline within which the arbitration proceeding must be completed *and* the award rendered.

■ Section 1283.8 was adopted as part of a comprehensive revision of the 1927 statutory scheme governing arbitration (§ 1280 et seq.).[10] The revision was recommended by the California Law Revision Commission's 1960 Recommendation and Study Relating to Arbitration. The Legislature unanimously enacted section 1283.8 without change, exactly as recommended by the Commission. (Feldman, *Arbitration Modernized—The New California Arbitration Act* (1961) 34 So. Cal. L.Rev. 413, fn. 1.) Consequently, the comments of the Law Revision Commission are persuasive evidence of the Legislature's intent. (*Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 249–250 [66 Cal.Rptr. 20, 437 P.2d 508], overruled on another ground in *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696, 702, fn. 4 [21 Cal.Rptr.2d 72, 854 P.2d 721].) " 'Reports of commissions which have proposed statutes that are subsequently adopted are entitled to substantial weight in construing the statutes. [Citations.] This is particularly true where the statute proposed by the commission is adopted by the Legislature without any change whatsoever and where the commission's comment is brief, because in such a situation there is ordinarily strong reason to believe the legislators' votes were based in large measure upon the explanation of the commission proposing the bill.' [Citations.]" (*Jevne v. Superior Court* (2005) 35 Cal.4th 935, 947 [28 Cal.Rptr.3d 685, 111 P.3d 954].)

In the instant case, the Law Revision Commission expressed concern over the delay that may occur if the parties have not specified a completion date for the arbitration in their agreement. The study supporting the Law Revision Commission Report noted that "the present statute [does not] have a time limit within which an award must be rendered. The parties in their arbitration agreement often fix the time within which the arbitrator must make his award, and this time limit will be enforced by the court unless the parties have waived it." In support of this statement, the study cited *Willis F. & C. Co. v. Porter* (1928) 88 Cal.App. 523 [263 P. 842], a case in which the parties set a date by which the entire arbitration proceeding was to be concluded and the award rendered. (*Id.* at pp. 524–525.) The study further observed: "Arbitra-

---

[10] We granted the Bosworths' motion to take judicial notice of the pertinent legislative history.

tion is often used by the parties to achieve a speedy settlement of the dispute. This end may be defeated if the parties have failed to fix a time limit for the rendering of awards in their agreement. The present statute does not set a time limit and case law does not indicate that a court may set its own time limit. It is recommended that the statute include a provision giving the court power to fix the time within which the award must be made on the motion of a party to the arbitration."

Consistent with the study, the Law Revision Commission's report recommended the adoption of section 1283.8: "If the arbitration agreement does not provide a time limit within which the arbitrators must determine the dispute, the court should be able to fix a time within which the matter must be decided. The absence of such a provision in the present California law permits an arbitration proceeding to be delayed unnecessarily. A party may be prevented from obtaining any relief at all in such cases, for a court proceeding would be stayed until the arbitration is completed."

Thus, the Law Revision Commission's study and report show that in the absence of an arbitration completion date set by agreement, section 1283.8 was intended to give the trial court power to prevent undue delay in completing the arbitration. By enacting section 1283.8 without amendment, the Legislature manifested its acceptance of the Law Revision Commission's recommendation. Indeed, in a letter to the Governor sent with the bill that enacted the new statutory scheme (Assem. Bill No. 832 (1961 Reg. Sess.)), the author of the bill expressed the same policy reasons for enacting section 1283.8 as had the Law Revision Commission. Assemblyman Clark L. Bradley's letter to the Governor explained, in part: "This is a bill prepared and recommended by the California Law Revision Commission. [¶] . . . [¶] The major changes made in the existing law by [the bill] are: [¶] . . . [¶] 7. This bill grants the court power to set the time within which the arbitrators must decide the controversy if the parties themselves have not done so. No provision of the existing law gives the court this power, and, as a result, a party may be deprived of any relief because he cannot get the arbitrators to act and he cannot go to court as long as the arbitration is pending. A. B. No. 832 will prevent this from occurring."

The conclusion that the Legislature intended section 1283.8 to authorize the setting of an arbitration completion date is also supported by the Legislative Counsel's report. The Legislative Counsel explained that the Law Revision Commission's proposals included making changes to, inter alia, the "conduct of [the] arbitration proceeding, including [the] time within which

[the] dispute may be decided." (Legis. Counsel, Report on Assem. Bill No. 832 (1961 Reg. Sess.) May 12, 1961. The report of the Legislative Counsel is entitled to great weight in construing the statute "since [the report is] prepared to assist the Legislature in its consideration of pending legislation." (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].)

As recognized by the Law Revision Commission, sound pragmatic considerations support the policy implemented by section 1283.8. Unreasonable delay in the resolution of the arbitration proceeding could effectively deprive a party of the speedy determination arbitration is intended to provide. This concern has prompted several courts to observe, albeit in dicta and without mentioning section 1283.8, that the trial court *does* have the power to issue an order setting a deadline for the arbitration. (See, e.g., *Burgess v. Kaiser Foundation Hospitals* (1993) 16 Cal.App.4th 1077, 1081 [20 Cal.Rptr.2d 488] ["[I]f there is any delay by an arbitrator, the appropriate remedy is not tolling of the five-year period, but rather a petition to the court for an appropriate order expediting the arbitration proceeding."]; *Boutwell v. Kaiser Foundation Health Plan* (1988) 206 Cal.App.3d 1371, 1374 [254 Cal.Rptr. 173] ["In the arbitration context, a plaintiff may petition the superior court to assist her in expediting the proceedings by . . . moving to set an arbitration date[.]"]; *Preston v. Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402, 407 [178 Cal.Rptr. 882] [finding that a trial court "which has ordered a matter to be arbitrated, [has] the power . . . to entertain a petition by the plaintiff for judicial assistance in moving the arbitration forward where the matter is foundering for reasons beyond plaintiffs' control"].) Citing these decisions, three leading treatises similarly conclude that a party can petition the trial court for relief if the arbitrator unreasonably delays the proceeding. (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 393, pp. 805, 807; 6 Cal. Jur. 3d (2003) Arbitration and Award, § 74, pp. 150–151; Knight et al., Cal. Practice Guide (The Rutter Group 2004) Alternative Dispute Resolution, ¶ 5:403.2, p. 5-208.)

To support a contrary conclusion, the Bosworths rely on *Titan/Value, supra,* 29 Cal.App.4th 482, and *Blake, supra,* 93 Cal.App.4th 728. On analysis, neither decision is persuasive.

In *Titan/Value,* after the plaintiffs filed suit against the defendants, the parties submitted their dispute to contractual arbitration. The trial court denied the defendants' petition to compel arbitration as moot, and stayed the lawsuit. For various reasons, the defendants became dissatisfied with the pace of arbitration and asked the trial court "to 'take control of the case.' "

(*Titan/Value, supra,* 29 Cal.App.4th at p. 485.) The trial court did so, issuing a detailed set of orders. The trial court ordered the defendants to respond to discovery. It set a date for completion of the arbitration, and directed the defendants to obtain new counsel if dates convenient for current counsel could not be found. The court permitted the plaintiffs one continuance of the arbitration proceeding with good cause, but permitted no continuance for the defendants. The court directed that the arbitration would proceed with one defendant in default, and modified the claims to be arbitrated. Finally, the court set a trial date in the event the parties failed to complete the arbitration by the date ordered. (*Id.* at p. 486.)

On the defendants' petitions for extraordinary relief, the appellate court held that "the trial court exceeded its jurisdiction in ordering the arbitration to proceed under the stated conditions subject to reinstatement on the trial calendar." (*Titan/Value, supra,* 29 Cal.App.4th at p. 488.) The court observed that after a petition to compel arbitration is granted and the lawsuit stayed, the trial court has only "vestigial" jurisdiction over the case. (*Id.* at p. 487.) In discussing the scope of that vestigial jurisdiction, the court's language suggests that a trial court has no power to set an arbitration completion date. Thus, the court stated that "[i]t is . . . up to the arbitrator, and not the court, to grant relief for delay in bringing an arbitration to a resolution." (*Id.* at p. 488.) Further, the court observed that "[t]he trial court may not step into a case submitted to arbitration and tell the arbitrator what to do and when to do it." (*Id.* at p. 489.)

In *Blake, supra,* 93 Cal.App.4th 728, the Court of Appeal used similar language in reversing the trial court's dismissal of a lawsuit for the plaintiff's delay in pursuing arbitration. In November 1998 the trial court had granted the defendants' petition to compel arbitration, and stayed the plaintiff's lawsuit. (*Id.* at pp. 734–735.) More than two years later, in October 2000, the defendants moved in the trial court to dismiss the plaintiff's complaint for lack of prosecution, arguing that the plaintiff had not commenced the arbitration proceeding, and the delay had prejudiced the defendants. In December 2000, the court granted the motion to dismiss. (*Id.* at pp. 735, 737.) The appellate court reversed, reasoning that the "[d]efendants' only avenue for redress when plaintiff failed to timely prosecute the arbitration was in the arbitration proceeding." (*Id.* at p. 737.) Further, the court stated that "rather than seek relief from the trial court for plaintiff's failure to proceed, defendants should have sought relief in the arbitration proceeding, by pursuing the remedies available under the arbitration agreement and the rules of the arbitration association designated therein." (*Id.* at p. 738.)

On their facts, no doubt *Titan/Value* and *Blake* were correctly decided. In each case, the trial court exceeded the scope of its authority after the case was ordered to arbitration. Certainly in *Titan/Value* the trial court's micromanaging of the arbitration and its conditional trial setting were improper. Likewise, in *Blake* the trial court's dismissal of the complaint for failure to diligently prosecute the arbitration was unauthorized by law. But to the extent the language of the opinions suggests that a trial court has no authority to fix an arbitration completion date, we respectfully disagree. If the parties have not set a completion date in their arbitration agreement, section 1283.8 gives the trial court the power, on petition of a party to the arbitration, to set a date by which the arbitration must be decided. Further, although it is the better practice to set the deadline when the matter is first ordered to arbitration, nothing in section 1283.8 or its legislative history suggests that a party cannot petition for a completion date after the court has ordered the case to arbitration, and while the arbitration is in progress.

■ *Titan/Value* and *Blake* do not mention section 1283.8. Nor do any of the authorities on which they rely. Because appellate opinions are not authority for unconsidered propositions (*Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1278 [135 Cal.Rptr.2d 654, 70 P.3d 1067]), *Titan/Value* and *Blake* are of no help in construing section 1283.8. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

■ We hold that absent an arbitration completion deadline established by agreement, section 1283.8 gives the trial court the power, on petition of a party to the arbitration, to set a date by which the arbitration proceeding must be completed and the award rendered.[11] The better practice is to establish that date when the case is first ordered to arbitration. However, the court has discretion to entertain a petition and set a completion date even after the arbitration is in progress. Of course, any date chosen (whether before or after arbitration has commenced) must be reasonable in light of the circumstances presented by the particular arbitration. Thus, in the present case, the trial court had the authority to grant the Bosworths' request to set a March 31, 2002 deadline for completion of the arbitration.[12]

---

[11] In view of this conclusion, there is no reason for us to discuss the Bosworths' alternative argument that section 1281.8, which permits a party to an arbitration to apply to the trial court for a provisional remedy in connection with the arbitration, authorized the court to set a completion date.

[12] On appeal, McCoy does not argue that the setting of that date was an abuse of discretion. He also did not make such an objection in the trial court.

We note that the danger of setting an unreasonable completion date is that an award rendered after expiration of a deadline imposed under section 1283.8 is void unless the parties extend the time, or waive the objection that the award was untimely. (See *Baar v. Tigerman* (1983) 140 Cal.App.3d 979, 981–982 [189 Cal.Rptr. 834, 211 Cal.Rptr. 426].) As recognized by the Law Revision Commission, case law holds that absent a waiver, "the provisions of an

### III. The Trial Court Abused Its Discretion in Removing Dymond As the Arbitrator; Hence, the Appointment of Judge Perez Was Unauthorized

■ Having concluded that section 1283.8 gave the authority to set an arbitration completion date, we next consider whether the trial court properly removed Dymond and replaced him with Judge Perez. Section 1281.6 permits the court to remove an arbitrator and appoint a successor in only limited circumstances. It provides: "[W]hen an arbitrator appointed *fails to act* and his or her successor has not been appointed, the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." (*Ibid.*, italics added.)[13] The Bosworths argue that because Dymond did not commit to complete the arbitration by March 31, 2002, the trial court properly found that he "fail[ed] to act" under section 1281.6, and therefore properly removed him.

We disagree. Although an arbitrator's inability to meet a court ordered deadline might in some circumstances constitute a failure to act justifying

agreement requiring the arbiter to render an award within a specified period are mandatory and jurisdictional and that an award rendered after the time has expired is a nullity and must be vacated by the court upon proper application." (*Rusnak v. General Controls Co.* (1960) 183 Cal.App.2d 583, 584 [7 Cal.Rptr. 71]; see *General Metals Corp. v. Precision Lodge 1600* (1960) 183 Cal.App.2d 586, 587 [6 Cal.Rptr. 910].) Hence, the Law Revision Commission stated that besides giving the court the power to set an arbitration completion date, "[i]t would also be desirable to codify existing case law to the effect that the parties may extend the time for rendering of [the] arbitration award either before or after the expiration of that time limit. To give protection against a casual waiver of this time limit the statute should specify that the extension be in writing. The statute should also provide that a party waives the objection that the award was not made within the time limit unless he notifies the arbitrator of his objection in writing prior to the delivery of the award." As recommended and passed, section 1283.8 contained provisions permitting the parties to extend the deadline, and declaring that a party "waives the objection that an award was not made within the time required unless he gives the arbitrators written notice of his objection prior to the service of a signed copy of the award on him." (See fn. 8, *ante.*)

[13] Section 1281.6 provides in full: "If the arbitration agreement provides a method of appointing an arbitrator, that method shall be followed. If the arbitration agreement does not provide a method for appointing an arbitrator, the parties to the agreement who seek arbitration and against whom arbitration is sought may agree on a method of appointing an arbitrator and that method shall be followed. In the absence of an agreed method, or if the agreed method fails or for any reason cannot be followed, *or when an arbitrator appointed fails to act and his or her successor has not been appointed, the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator.*

"When a petition is made to the court to appoint a neutral arbitrator, the court shall nominate five persons from lists of persons supplied jointly by the parties to the arbitration or obtained from a governmental agency concerned with arbitration or private disinterested association concerned with arbitration. The parties to the agreement who seek arbitration and against whom arbitration is sought may within five days of receipt of notice of the nominees from the court jointly select the arbitrator whether or not the arbitrator is among the nominees. If the parties fail to select an arbitrator within the five-day period, the court shall appoint the arbitrator from the nominees." (Italics added.)

removal, the record does not support such a finding here. To the contrary, since his appointment in May 2000, Dymond had been *performing* his duties as arbitrator. He had conducted preliminary hearings. He had made various rulings, including ordering the Bosworths to prepare their statement of damages, setting a deadline for the defense to file its claims against the subcontractors, directing the defense to produce documents, and ordering the Bosworths to permit McCoy to conduct an inspection of the home. With the consent of the parties, he had continued the hearing for two months so that proper notice could be given to the subcontractors after the AAA had failed to do so. Thus, for almost two years, Dymond had been fulfilling his obligations as arbitrator.

At oral argument on appeal, the Bosworths stated that Dymond had told the trial court that he was not bound by the March 31, 2002 deadline. The Bosworths are mistaken. Instead, on January 31, Dymond simply informed the court that he could not promise that the arbitration would be complete by March 31 if the Bosworths insisted (as they did) on the participation of BDI. Consequently, as of February 1—the day the trial court removed Dymond as arbitrator—there was at best an *anticipatory* failure by Dymond to comply with the March 31 deadline.

Regardless, even if Dymond could not complete the arbitration by March 31, this inability was not caused by his "fail[ure] to act" within the meaning of section 1281.6. The arbitration had been delayed for various reasons, *none* of which were attributable to Dymond. For instance, the Bosworths failed to comply with Dymond's order to provide their final defect list, damages estimate, and expert reports by October 15, 2000. They did not submit the required documentation until February 28, 2001. Similarly, McCoy was also responsible for a two-month delay because he did not pay his arbitration fees in a timely manner. The AAA (not Dymond) also caused delay because it failed to properly notify the subcontractors of the arbitration, an administrative error that required Dymond to continue the arbitration hearing (with the consent of the parties) for two months.

Even drawing all inferences in favor of the trial court's ruling, this record does not support a finding that Dymond failed to act within the meaning of section 1281.6. Thus, the trial court's removal of Dymond was an abuse of discretion. (Cf. *Cathcart v. Security Title Ins. etc. Co.* (1944) 66

Cal.App.2d 469, 474–475 [152 P.2d 336] [record supported removal of arbitrator who did not meet with another arbitrator to select third arbitrator and who offered no reasonable excuse for his failures].)

Because Dymond's removal was improper under section 1281.6, the court was not authorized by that statute to appoint a successor. Where the court is not authorized to appoint an arbitrator, section 1281.6 requires that the arbitrator be appointed by the method provided in the parties' arbitration agreement. Here, the parties' agreement incorporated the applicable AAA rules, which provide a procedure for selection of an arbitrator, including the selection of a successor if the present "arbitrator is unable to perform the duties of the office." (AAA rule R-22.) "The arbitration agreement's requirement for resolution of the present dispute 'in accordance with' pertinent AAA procedures means that the arbitration must take place before that designated agency, that is, in an AAA forum." (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 120 [7 Cal. Rtpr. 2d 687].)

Thus, the trial court's appointment of Judge Perez violated the parties' contract, and Judge Perez's arbitration award in favor of the Bosworths is void. In *American Home Assurance Co. fv. Benowitz* (1991) 234 Cal.App.3d 192 [285 Cal.Rptr. 626], we explained that the selection of an arbitrator "that is not authorized by the arbitration contract, or by a statute that is effectively incorporated into that agreement, confers no authority on the person selected. Unless this fundamental defect is waived by the parties, or a party is estopped from raising it, there is simply nothing to confirm. [Citation.]" (*Id.* at pp. 200–201.)

The Bosworths characterize McCoy's conduct as "procedural gamesmanship" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30 [10 Cal.Rptr.2d 183, 832 P.2d 899]) that constitutes either a waiver of the right to challenge Judge Perez's appointment, or a basis for estopping such a challenge. But the record does not support the contention. By clearly and consistently objecting to the trial court's power to select a new arbitrator, McCoy did not forfeit his right to pursue the argument on appeal but, instead, preserved it. Further, the record discloses that ample blame was shared by the Bosworths and the AAA for the delay in resolving the arbitration. On the entire record, there is simply no basis to deprive McCoy of the right to challenge the unauthorized appointment of Judge Perez. Because Judge Perez was not empowered to act as arbitrator, his award was of no effect, and the judgment entered on it must be reversed.

## DISPOSITION

The judgment is reversed and the matter is remanded for proceedings consistent with the views expressed in this opinion. McCoy shall recover his costs on appeal.

Hastings, Acting P. J., and Curry, J., concurred.

A petition for a rehearing was denied January 24, 2006.