Filed 5/13/13  Watson v. Knorr CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HIROKO M. WATSON et al., | H036430 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. CV173828) |
| v. | |
| ANDREW P. KNORR et al., | |
| Defendants and Respondents. | |

Plaintiffs Hiroko M. Watson, Mary Watson, and Madeline Watson, (hereafter jointly Plaintiffs) are the widow and daughters of decedent David Watson.  Plaintiffs filed a complaint against Dr. Andrew Knorr and the Monterey Bay Urology Associates (jointly Defendants) for medical malpractice and wrongful death resulting from Dr. Knorr's treatment of David Watson.  The parties subsequently stipulated to binding contractual arbitration in accordance with the arbitration agreement David Watson signed prior to treatment.  At arbitration, Plaintiffs were awarded $1,092,797, plus "costs in accordance with the California Code of Civil Procedure."  Plaintiffs petitioned the court to confirm the award; in their response, Defendants challenged the award of costs, arguing that the arbitration agreement required the parties to bear their own costs.  The trial court corrected the award by removing the award of costs and confirmed the award as

corrected. Plaintiff moved for reconsideration (Code Civ. Proc., § 1008),[1] arguing that they were entitled to costs pursuant to Code of Civil Procedure section 998 and prejudgment interest (Civ. Code, § 3291) because the Defendants rejected Plaintiffs' offer to compromise. The court denied the motion for reconsideration. Plaintiffs appeal.

We conclude that since the parties submitted the question of costs to arbitration, it was for the arbitrators to determine both the entitlement to and the amount of costs to be awarded. Since this case does not meet any of the statutory grounds for correcting the award, the trial court could not correct the award, by either deleting the award of costs or determining the amount of costs, rendering the costs award a legal nullity. We hold that Plaintiffs should have presented their section 998 costs claim to the arbitrators and that they forfeited their Civil Code section 3291 prejudgment interest claim by failing to raise it in their petition to confirm the arbitration award. We conclude, however, that the trial court improperly denied Plaintiffs their costs related to the proceedings in the trial court (§ 1293.2) and will reverse the judgment and remand for the purpose of awarding those costs.

FACTS

## I. *Medical Treatment of Plaintiffs' Decedent & Allegations of Malpractice*[2]

On January 26, 2007, David Watson[3] was scheduled for a surgical procedure at the offices of the Monterey Bay Urology Associates in Freedom, California. While attempting to insert a catheter into David's bladder, Dr. Knorr's medical assistant

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

[2] The facts regarding the alleged malpractice are based on Plaintiffs' arbitration brief.

[3] For ease of reference and meaning no disrespect, we shall hereafter refer to the members of the Watson family individually by their first names.

encountered a blockage and summoned Dr. Knorr. While attempting to dilate the blockage, Dr. Knorr perforated David's urethra, creating a false passage through the prostate. Dr. Knorr placed the catheter into the false passage and injected lidocaine into the catheter. Lidocaine entered David's bloodstream. Within seconds, David experienced convulsions and lost his airway. Dr. Knorr was unable to resuscitate David, who died as a result of the procedure. Plaintiffs alleged Dr. Knorr violated the standard of care by proceeding with the surgery after discovering the blockage and by treating the complications of lidocaine toxicity without the proper knowledge or equipment.

## II. Terms of Arbitration Agreement

In October 2002, David signed a physician-patient arbitration agreement (Arbitration Agreement). The Arbitration Agreement provides in Article 1: "**Agreement to Arbitrate**: It is understood that any dispute as to medical malpractice, . . . , will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings."

Article 2 of the agreement stated that the parties intended that the "agreement bind all parties whose claims may arise out of or relate to treatment or services provided by the physician including any spouse or heirs of the patient and any children," including claims for loss of consortium and wrongful death.

Article 3 of the agreement provides in relevant part: "**Procedures and Applicable Law**: . . . Each party shall select an arbitrator (party arbitrator) . . . and a third party arbitrator (neutral arbitrator) shall be selected by the arbitrators appointed by the parties . . . . Each party to the arbitration shall pay such party's pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees, or other expenses incurred by a party for such party's own benefit." We shall hereafter refer to this portion of the Arbitration Agreement as the "costs provision."

3

Article 4 of the agreement provides in relevant part:  "With respect to any matter not herein expressly provided for, the arbitrators shall be governed by the California Code of Civil Procedure provisions relating to arbitration."

## PROCEDURAL HISTORY

### I. Complaint, Stipulation to Binding Arbitration, and Arbitration Award

In January 2008, Plaintiffs filed a complaint for medical malpractice and wrongful death against Monterey Bay Urology Associates, Dr. Knorr, and Dr. Knorr's medical assistant in Santa Cruz County Superior Court.[4]  The complaint included a prayer for compensatory damages and "costs of suit."

The parties subsequently stipulated to dismiss the complaint without prejudice, "[e]ach side to bear their own costs and attorney's fees," and to proceed by way of binding arbitration pursuant to the Arbitration Agreement.  Plaintiffs selected Attorney Gary Mitchell as their "non neutral" arbitrator and Defendants selected Attorney Jesse Ruiz as their "non neutral" arbitrator.  The arbitrators selected retired Judge Robert Yonts to serve as the neutral arbitrator.

On or about March 16, 2010, Plaintiffs served a section 998 offer to compromise (hereafter "998 offer") on all three named Defendants jointly for $975,000.[5]  Defendants did not accept the 998 offer.

The arbitrators conducted a hearing from May 17 through May 21, 2010.  On May 24, 2010, the arbitrators issued a "Final Award" in favor of Plaintiffs that included "$832,502 for loss of support and loss of household services, $10,205 in funeral expenses, and $250,000 in general damages as limited by MICRA[6] for a grand total of

---

[4]  At arbitration, Plaintiffs dismissed their claims against the medical assistant.

[5]  The record on appeal does not contain a proof of service for the 998 offer. However, Defendants do not contend that the 998 offer was not served upon them.

[6]  MICRA is the Medical Injury Compensation Reform Act of 1975.  (*Fein v. Permanente Medical Group* (1985) 38 Cal.3d 137, 142.)  One provision of MICRA limits

4

$1,092,707."[7]  The arbitrators also awarded Plaintiffs "costs in accordance with the California Code of Civil Procedure."[8]

## II. *Petition to Confirm Arbitration Award*

In June 2010, Plaintiffs filed a petition to confirm contractual arbitration award in Santa Clara County Superior Court.  The petition stated that "$1,092,707 & costs" were in dispute.  Plaintiffs asked the court to confirm the arbitration award, to award them interest from March 16, 2010, and to award them their costs of suit "according to proof."  Although March 16, 2010 was the date of the 998 offer, the petition to confirm did not mention the 998 offer.

Plaintiffs subsequently filed a notice of hearing and a memorandum of points and authorities in support of their petition to confirm the arbitration award.  Plaintiffs attached a copy of the arbitration award, argued that the award was presumed valid, and asked the court to enter judgment in accordance with the award.  Plaintiffs also filed a proposed "Judgment Confirming Arbitration Award," suggesting the court award "$1,092,707.00" and "costs in the amount of $_____," thus indicating Plaintiffs expected the trial court to determine the amount of any costs to be awarded.  These papers did not mention the 998 offer, Defendants' rejection of the offer, or that the amount awarded at arbitration exceeded the amount of the 998 offer; they were also silent regarding pre-judgment interest.

Defendants opposed the petition to confirm the arbitration award, arguing that any award of costs must be denied because the parties had expressly agreed in the Arbitration

---

noneconomic damages in medical malpractice cases to $250,000.  (*Ibid.*; Civ. Code, § 3333.2.)

[7]  The components of the award were in the amounts Plaintiffs claimed in their arbitration brief, except for 20 cents in funeral expenses, which the arbitrators apparently rounded off.

[8]  Defense arbitrator Ruiz "dissent[ed]" from the award.

Agreement, which contained language that was virtually identical to that of section 1284.2, to bear their own costs and to split the costs of the neutral arbitrator and that the court lacked jurisdiction over Plaintiffs' request for costs. Defendants argued the arbitrators' award of costs was "not consistent with" the terms of the Arbitration Agreement and therefore a legal nullity. Defendants noted that Plaintiffs had requested an unspecified amount in costs, had not filed a memorandum of costs, and had not requested costs in their arbitration brief.

In reply, Plaintiffs argued that arbitrators have the authority to fashion relief they consider just and fair under the circumstances, including an award of costs. They argued that the Arbitration Agreement only specified how the neutral arbitrator was to be paid and that nothing therein prohibited an award of costs. Plaintiffs argued they were "[e]ntitled to their costs of suit pursuant to the arbitration award," but also asserted that "all issues regarding entitlement to costs and the amount of recoverable costs are to be determined by the arbitrator." Plaintiffs' reply did not mention the 998 offer or pre-judgment interest.

The day before the hearing on the petition to confirm the arbitration award, the court issued a tentative ruling, stating that the petition was "GRANTED, each side to bear their own costs pursuant to the arbitration agreement." In effect, the court corrected the award by deleting the award of costs and confirmed the award as corrected. (§ 1286.6.) Neither side contested the tentative ruling and it became the order of the court.

### III.   *Plaintiffs' Memorandum of Costs & Motion for Reconsideration*

The day after the hearing on the petition to confirm the arbitration award, Plaintiffs filed a memorandum of costs, claiming $66,120.46 in costs, which included $715 for filing and motions fees; $13,361.05 for deposition costs; $32,639.34 for expert witness fees; $7,652 for Plaintiffs' non neutral arbitrator; $10,884 for the neutral arbitrator; and other costs.

6

Two days later, Plaintiffs filed a "Motion to Determine Amount of Judgment, Costs and Interest Thereon and Motion for Reconsideration of Court's Order Re: Costs" (§ 1008). In the motion, Plaintiffs' counsel stated that due to "inadvertence and excusable neglect and because this matter was denominated a petition, the normal procedures regarding law and motion matters were not followed," that he "inadvertently neglected to calendar the tentative ruling," and that he therefore failed to call to contest the tentative ruling. Plaintiffs argued that they were entitled to costs pursuant to section 998, subdivision (d), and pre-judgment interest pursuant to section 3291. Plaintiffs argued that since the Arbitration Agreement was silent regarding 998 offers to compromise, the arbitrators had the discretion to award costs under section 998, subdivision (d). Plaintiffs asserted that neither the Arbitration Agreement nor section 1284.2 prohibited an award of costs and that both case law and the rules of court recognize that such awards are within the arbitrator's jurisdictional authority.

While the motion for reconsideration was pending, Defendants filed a motion to tax costs, arguing that Plaintiffs were precluded from recovering costs by the court's prior order and by the Arbitration Agreement. Defendants asked for an opportunity to present supplemental briefing should the court grant reconsideration.

Defendants also opposed the motion for reconsideration, arguing that it should be denied because there were no new facts, circumstances, or law that justified reconsideration. Defendants argued that to prevail on a motion for reconsideration, the moving party must present some fact or circumstance not previously considered and a valid reason for not offering it earlier. Defendants argued that the 998 offer, Defendants' failure to accept the offer, and the rendition of an arbitration award that exceeded the 998 offer were not new facts, since Plaintiffs knew about them before filing their petition to confirm the arbitration award, and that Plaintiffs had failed to provide a satisfactory explanation for failing to present this information at the last hearing. Defendants argued that reconsideration could not be granted based on counsel's claim that he did not intend

7

to waive oral argument, since that was not a new matter. They asserted that although parties to an arbitration may generally recover costs under section 998, that rule does not apply here because the parties contractually agreed to bear their own costs. Defendants argued that Plaintiffs were not entitled to pre-judgment interest because the arbitrators did not award interest and that Plaintiffs were trying to augment the award beyond the amounts awarded by the arbitrators.

In reply, Plaintiffs argued that the motion for reconsideration was based on facts and legal authority the court had not considered before and that the court had the power to reconsider its ruling any time prior to entry of judgment.

The court denied the motion for reconsideration, reasoning that Plaintiffs had not shown good cause.[9] The court subsequently entered a "Judgment Confirming Arbitration Award" for Plaintiffs for $1,092,707. The judgment stated: "The arbitrator's award of costs to [Plaintiffs] is disallowed pursuant to Article 3" of the Arbitration Agreement. The record does not contain a separate order on Defendants' motion to tax costs. Plaintiffs appeal.

## DISCUSSION

### I. General Principles Regarding Arbitration

California's Arbitration Act, sections 1280 through 1294.2, set forth a comprehensive statutory scheme governing private arbitration in this state, including contractual arbitrations. (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 704-705 (*Corona*), citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) These statutes reflect " 'a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh*, *supra,* at p. 9.)

---

[9] Although the parties appeared for the hearing on the motion for reconsideration, the reporter's transcript of that hearing is not part of the record on appeal.

8

Consequently, courts will " 'indulge every intendment to give effect to such proceedings.' " ' (*Ibid.*)

As the court explained in *Cable Connection, Inc. v. DIRECTV, Inc*. (2008) 44 Cal.4th 1334 (*Cable Connection*), "*Moncharsh* began from the premise that ' "[t]he scope of arbitration is . . . a matter of agreement between the parties" [citation], and " '[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission.' " [Citation.]' [Citation.] ' "The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing." [Citation.]' [Citation.] 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and *conclusive because the parties have agreed that it be so*. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain.' " (*Id.* at p. 1355, quoting *Moncharsh*, *supra*, 3 Cal.4th at pp. 8-10.)

" 'Moreover, "[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." [Citations.]' [Citation.] 'Thus, both because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, "The merits of the controversy between the parties are not subject to judicial review." [Citations.]' " (*Cable Connection*, *supra*, 44 Cal.4th at p. 1355, quoting *Moncharsh* *supra*, 3 Cal.4th at pp. 10-11.) The court's "reasoning in *Moncharsh* centered not on

9

statutory restriction of the parties' contractual options, but on the parties' intent and the powers of the arbitrators as defined in the agreement." (*Ibid.*)

By contracting for binding arbitration, the parties agreed to determine their dispute " 'without necessity for any contact with the courts.' " (*Moncharsh*, *supra*, 3 Cal.4th at p. 9.) "Arbitrators do not exceed the scope of their authority because they erroneously decide a contested issue of fact or law; the parties' expectation of finality from a binding arbitration requires that 'judicial intervention in the arbitration process be minimized.' (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal. 4th at p. 10.) To avoid the extra delay, uncertainty, and costs of judicial review, we refrain from substituting our judgment for the arbitrator's; in close cases, the award must stand." (*Caro v. Smith* (1997) 59 Cal.App.4th 725, 734-735 (*Caro*).)

In *Moncharsh*, the California Supreme Court "held judicial review of private, binding arbitration awards is generally limited to the statutory grounds for vacating (§ 1286.2) or correcting (§ 1286.6) an award" and "rejected the view that a court may vacate or correct the award because of the arbitrator's legal or factual error, even an error appearing on the face of the award." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775 (*Moshonov*), citing *Moncharsh*, *supra*, 3 Cal.4th at pp. 8-28.)

"Where parties have agreed to submit their dispute to private arbitration, the scope of the arbitration and the powers of the arbitrator are defined in accordance with the agreement. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 8-9.) However, this does not mean that the parties to a private arbitration must specify every detail, characteristic and consequence of the proceeding they contemplate. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831 (*Vandenberg*).) Rather the statutory scheme sets forth the basic parameters of such proceedings unless the parties specifically agree otherwise; such parameters include limited judicial review of the arbitration award. (*Ibid.*, citing Code Civ. Proc., §§ 1286.2, 1286.6 and *Moncharsh*, *supra*, 3 Cal.4th at pp. 8-33 [finding

10

statutory grounds for judicial review exclusive].)" (*Corona, supra*, 107 Cal.App.4th at p. 705.)

## II. Standard of Review

Our review is from the superior court's judgment on the order confirming the arbitration award, not the arbitration award itself. Accordingly, we review the court's judgment de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*); see also *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217.)

"It is well settled that the scope of judicial review of arbitration awards is extremely narrow." (*California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, 943; accord, *City of Palo Alto v. Service Employees Internat. Union* 1999) 77 Cal.App.4th 327, 333 (*City of Palo Alto*).) "Courts may not review the merits of the controversy, the sufficiency of the evidence supporting the award, or the validity of the arbitrator's reasoning." (*DPA v. CCPOA* (2007) 152 Cal.App.4th 1193, 1200; *Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313.) Judicial review is limited to "those cases in which there exists a statutory ground to vacate or correct the award." (*Moncharsh, supra,* 3 Cal.4th at p. 28; see §§ 1286.2 [grounds for vacating arbitration award], 1286.6 [grounds for correcting arbitration award].) In the absence of "a clear expression of illegality or public policy undermining [the] strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Moncharsh, supra,* at p. 32.) "The normal rule of limited judicial review cannot be avoided except in those rare cases where 'according finality to the arbitrator's decision would be incompatible with the protection of a statutory right' or where the award contravenes 'an explicit legislative expression of public policy.' " (*City of Palo Alto, supra,* 77 Cal.App.4th at p. 334, quoting *Moncharsh, supra,* at pp. 32-33.)

11

We review the trial court's order on a motion for reconsideration under the abuse of discretion standard. (*Lucas v. Santa Maria Pub. Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027 (*Lucas*).)

With these general principles and our standards of review in mind, we examine the trial court's orders (1) correcting and confirming the arbitration award; and (2) on the motion for reconsideration. We shall divide our analysis into three sections, according to the claims at issue: (1) costs of the arbitration proceedings, including costs recoverable as a penalty under section 998; (2) prejudgment interest under Civil Code section 3291; and (3) costs of arbitration-related proceedings in the trial court (§ 1293.2). We also address Defendants' contention that Plaintiffs have forfeited their claims on appeal and the propriety of the court's order on the motion for reconsideration.

### III. *Costs of the Arbitration Proceedings*

Plaintiffs attack the trial court's order on their petition to confirm the arbitration award on both procedural and substantive grounds. Procedurally, Plaintiffs contend that the court "corrected the award without the proper procedures having been followed," arguing that Defendants never requested that the award be corrected as required by section 1286.8. On the merits, Plaintiffs contend that the Arbitration Agreement did not preclude the award of costs. Defendants contend the court did not have the authority to "correct" the award as requested by Plaintiffs and thereby determine the amount of costs to be awarded. They also contend that under the terms of the Arbitration Agreement, which are virtually identical to those of section 1284.2, Plaintiffs were required to bear their own costs and share the costs of the neutral arbitrator.

#### A. Plaintiffs' Procedural Challenge

"Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award." (§ 1285.) A response to a section 1285 petition may ask "the court to dismiss the petition or to confirm, correct or vacate the award." (§ 1285.2) After a section 1285 petition is filed, the court has only four options:

it may (1) confirm the award; (2) correct the award and confirm it as corrected; (3) vacate the award; or (4) dismiss the petition. (§§ 1285, 1285.2, 1286.)

Plaintiffs asked the court to confirm the arbitration award, including the award of costs, to award them interest from March 16, 2010, and to award them costs of suit according to proof. As we have noted, Plaintiffs contend the court "corrected the award without the proper procedures having been followed" because Defendants never requested that the award be corrected.

Section 1286.8 states the procedural prerequisites for correcting an arbitration award. It provides: "The court may not correct an award unless: [¶] (a) A petition or *response* requesting that the award be corrected has been duly served and filed; or [¶] (b) A petition or response requesting that the award be vacated has been duly served and filed and; [¶] (1) All petitioners and respondents are before the court; or [¶] (2) All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to correct the award . . . and all petitioners and respondents have been given an opportunity to show why the award should not be corrected." (Italics added.)

Although neither side filed a paper denominated "petition to correct arbitration award," Defendants did file "opposition" to the petition to confirm. Defendants' opposition argued that the arbitrator's award of costs was a legal nullity because it was contrary to the terms of the Arbitration Agreement, and asked the court to strike the costs award and to "deny" Plaintiffs' petition to "confirm the award with the ordinary costs augmentations." Although not labeled as such, Defendants' opposition was a "response" within the meaning of section 1286.8. And although Defendants did not expressly ask the court to "correct" the award, their request to strike the allegedly improper costs award was, in effect, a request to correct the award. Plaintiffs do not contend that any of the other procedural requirements of section 1286.8 were not met and we perceive no error in

13

that regard. For these reasons, we reject Plaintiffs' contention that this case did not meet the procedural requirements of section 1286.8 for correcting the arbitration award.

**B. Were There Statutory Grounds for Correcting the Award?**

Section 1286.6 sets forth three statutory grounds for correcting an arbitration award. It provides, subject to the procedural requirements in section 1286.8, "the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶] (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

Although Defendants asked the trial court to correct the arbitration award by striking the costs award, they did not cite or rely on section 1286.6 in their response below. Defendants argued that both the arbitrators and the court lacked jurisdiction to award costs because the Arbitration Agreement specifically provided for a costs allocation. They argued that "the court [could] not do what the arbitrators had attempted to do, make an award of costs not consistent with the terms of the agreement" and that Plaintiffs' proposed judgment sought "substantive modifications of the final award." But rather than discuss the court's authority to correct an award under section 1286.6, Defendants cited section 436, subdivision (b),[10] and argued that the costs portion of the award should be stricken "on the grounds that it was not filed in conformity with the law." Defendants' reliance on section 436 was misplaced since that section states the

---

[10] Section 436 provides: "The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶ (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."

14

grounds for a motion to strike a pleading in a court action and has nothing to do with arbitration.

On appeal, Defendants argue that although Plaintiffs "styled" their petition as a petition to confirm the award, Plaintiffs essentially sought correction of the award by asking the court to award ordinary costs and then on reconsideration "by asking the court to add section 998 enhanced costs and section 3291 interest not awarded by the panel." Case law supports this characterization of the petition. (*Maaso v. Signer* (2012) 203 Cal.App.4th 362, 378 (*Maaso*).) Defendants assert the court "had no authority" to make the correction Plaintiffs requested since none of the grounds for correcting the award in section 1286.6 apply. But Defendants do not discuss whether or how their request that the court correct the arbitration award by deleting the award of costs fits the statutory grounds for correcting an award.

While the arbitrators determined Plaintiffs' entitlement to costs, they did not determine the amount of costs to be awarded or the reasonableness of Plaintiffs' costs claim. And as we shall explain, although the record supports the conclusion that the issue of costs was submitted to arbitration, the record on appeal does not contain any information regarding the evidence or argument presented at arbitration, other than a copy of Plaintiffs' arbitration brief, which is silent regarding costs. In addition both parties' supplemental briefs state that Plaintiffs never advised the arbitrators of the 998 offer. On this record, we conclude that both sides asked the court to correct the arbitration award. Defendants asked the court to strike the costs award in its entirety, arguing that it was not authorized by the Arbitration Agreement; Plaintiffs asked the court to correct the award by determining the amount of costs awarded.

We return to the question whether this case fits any of the statutory grounds for correcting the award. The parties' briefs provide no guidance. Plaintiffs do not discuss section 1286.6 at all and, as we have noted, Defendants argue that none of the grounds in

15

section 1286.6 apply. The only ground that arguably[11] applies is in subdivision (b), which provides that the court may correct the award if "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.6, subd. (b).) We, therefore, determine whether the arbitrators have exceeded their powers.

"When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." ' [Citations.]" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*).)

"[A]rbitrators do not 'exceed[] their powers' within the meaning of section 1286.2, subdivision (d) and section 1286.6, subdivision (b) merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators. 'The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' " (*Moshonov*, *supra*, 22 Cal.4th at pp. 775-776, quoting *Moncharsh*, *supra*, 3 Cal.4th at p. 28.)

*Moshonov* is instructive. The dispute in *Moshonov*, which arose out of a real estate purchase, was submitted to binding arbitration. "The arbitrator found for [the]

---

[11] The parties do not claim "an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award" (§ 1286.6, subd. (a)) or that the "award is imperfect in a matter of form, not affecting the merits of the controversy" (§ 1286.6, subd. (c)).

defendants, the sellers.  Although the real estate purchase agreement contained a clause providing for reasonable attorney fees to the prevailing party in an 'arbitration or suit . . . brought to enforce the terms of this contract . . .' and although the arbitrator found [the] defendants were the prevailing parties . . . , the arbitrator refused to award [the] defendants any fees, reasoning that the contractual attorney fees clause was not broad enough to encompass the claims against [the] defendants, claims the arbitrator found were noncontractual in nature.  [¶]  The superior court denied [the] defendants' motion to correct the award (Code Civ. Proc., § 1286.6) to include an award of attorney fees; the Court of Appeal affirmed." (*Moshonov*, *supra*, 22 Cal.4th at p. 773, fn. omitted.)  The Supreme Court concluded that the lower courts were correct.  The court explained that "where an arbitrator's denial of fees to a prevailing party rests on the arbitrator's interpretation of a contractual provision within the scope of the issues submitted for binding arbitration, the arbitrator has not 'exceeded [his or her] powers' " within the meaning of sections 1286.6, subdivision (b) and 1286.2.  (*Ibid*.)  The court held that "under the principle of arbitral finality as explained in *Moncharsh*, the arbitrator's award . . . could not be judicially corrected to award [the] defendants their attorney fees." (*Id.* at p. 776.)  The court noted that all parties had prayed for fees in their various pleadings and that the parties had submitted " 'this matter' " to binding arbitration, "without any pertinent limitation on the issues to be arbitrated." (*Ibid.*, fn. omitted.) Under the rules of arbitration the parties agreed to, the arbitrator was empowered to " 'determine all issues properly raised by the pleadings, including a determination of any damages and an award of costs if appropriate,' " and " 'to award costs, not to exceed the statutory costs of the suit.' " (*Ibid.*)  The court held, "[u]nder these circumstances, the arbitrator had the power to decide the entire matter of recovery of attorney fees.  The recovery or nonrecovery of fees being one of the 'contested issues of law and fact submitted to the arbitrator for decision' [citation], the arbitrator's decision was final and could not be judicially reviewed for error." (*Ibid.*)

17

## C. Was the Issue of Costs Submitted to Arbitration?

We determine whether the issue of costs was within the scope of the controversy submitted to the arbitrators by reviewing Plaintiffs' complaint, the stipulation to arbitration, the arbitration agreement, and any arbitration rules the parties may have agreed to. (*Moshonov*, *supra*, 22 Cal.4th at pp. 776-777.)

In their Judicial Council form complaint, Plaintiffs prayed "for judgment, *for costs of suit*, for such relief as is fair, just, and equitable." (Italics added.) And in their stipulation to binding arbitration, the parties identified the complaint by its title and number and agreed to submit "this matter" to binding arbitration without any limitation on the issues to be arbitrated. Thus, the stipulation encompassed all matters placed at issue by the complaint, including costs. (See *Moshonov*, *supra*, 22 Cal.4th at p. 776.) In addition, nothing in the Arbitration Agreement preclude submitting the issue of costs to arbitration.

We also consider any rules the parties may have agreed to. For example, in *Moshonov*, the parties agreed to arbitrate their dispute in accordance with the rules applicable to *judicial* arbitration and the court relied on those rules in its analysis. (*Moshonov, supra,* 22 Cal.4th at p. 776.) Other cases have relied on the rules of the American Arbitration Association (AAA) or other arbitral forums. (See e.g., *Advanced Micro Devices*, *supra,* 9 Cal.4th at pp. 368, 383 [parties agreed to their own rules for the arbitration, some of which were based on AAA Commercial Arbitration rules]; *Gravillis v. Coldwell Banker Residential Brokerage Co*. (2010) 182 Cal.App.4th 503, 510, 520 [ADR Service, Inc. rules]; *Bosworth v. Whitmore* (2006) 135 Cal.App.4th 536, 542 & fn. 4 (*Bosworth*) [AAA Construction Industry Arbitration rules]; *Gutierrez v. Autowest, Inc*. (2003) 114 Cal.App.4th 77, 99 [AAA rules].)[12]

---

[12] Plaintiffs argue that the trial court's interpretation of the costs provision "collide[s] with rule 3.824 of the California Rules of Court, which grants an arbitrator the authority to award costs." California Rules of Court, rule 3.824 provides: "The arbitrator

18

Although the record indicates the neutral arbitrator was a member of the Judicial Arbitration and Mediation Services (JAMS), the record is silent regarding the rules, if any, the parties may have agreed would govern their arbitration. On our own motion, we have taken judicial notice of the JAMS rules in effect at the time of the arbitration. (Evid. Code, § 452, sub. (h); *Bosworth*, *supra*, 135 Cal.App.4th at p. 542, fn. 4.) JAMS rule 24 governs awards; it provides in relevant part: "(g) The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' agreement or allowed by applicable law." (JAMS Rules Archive at <http://www.jamsadr.com/files/ Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-2009.pdf> (as of May 1, 2013) (JAMS Rules).) As we shall explain, applicable law allows for an award of costs in this case.

Based on the complaint, the stipulation to arbitration, the Arbitration Agreement, and the applicable arbitration rules, we conclude that the issue of costs was submitted to the arbitrators for decision.

## D. Did the Arbitrators Exceed Their Powers?

"Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier, supra,* 43 Cal.4th 1179, 1182.) "An exception to the general

has the following powers; all other questions arising out of the case are reserved to the court: [¶] . . . [¶] (8) To award costs, not to exceed the statutory costs of the suit; . . . ." Plaintiffs' reliance on rule 3.824 is misplaced. Rule 3.824 is part of chapter 2 of division 8 of title 3 of the California Rules of Court, which governs judicial arbitration. Absent an express agreement by the parties, the rules governing judicial arbitration do not apply in cases involving true or contractual arbitration. (*Moshonov, supra,* 22 Cal.4th at p. 776 [parties stipulated to binding arbitration pursuant to the "California Rules of Court ordinarily governing judicial arbitration"]; *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 343-345 [describing differences between judicial and contractual arbitration].)

rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers. (*Advanced Micro Devices*, *supra*, 9 Cal.4th at pp. 375–376, 383.) 'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court.' (*Id.* at p. 375.)" (*Id.* at p. 1185.)

To "take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Cable Connection*, *supra*, 44 Cal. 4th at p. 1361.) For example, the arbitration clause in *Cable Connection* provided that "[t]he arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error." (*Id.* at p. 1361, fn. 20.) The court held this clause both deprived the arbitrators of the power to commit legal error and provided for judicial review of such error. (*Id.* at p. 1361.) The court did not decide whether one or the other of these factors alone, or some different formulation, would be sufficient to confer an expanded scope of review, but cautioned that "parties seeking to allow judicial review of the merits, and to avoid an additional dispute over the scope of review, would be well advised to provide for that review explicitly and unambiguously." (*Ibid.*)

Unlike the agreement in *Cable Connection*, the Arbitration Agreement does not contain any provision that explicitly provides that legal errors are in excess of the arbitrator's authority and therefore reviewable by the court. The parties agreed instead that "any dispute as to medical malpractice . . . will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings."

*Moshonov* discussed *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809 (*DiMarco*), in which the Court of Appeal concluded that the arbitrator exceeded his powers under

20

section 1286.6 by denying attorney fees to the prevailing party where the contract provided that " 'the prevailing party *shall* be entitled to reasonable fees and costs.' " (*Moshonov*, *supra*, 22 Cal.4th at pp. 778-779.)  In response to argument that *DiMarco* was wrongly decided, *Moshonov* distinguished *DiMarco* and explained that the appellate court in *DiMarco* "found no interpretation of the fees clause, express or implied in the arbitrator's decision, according to which the defendant would not have been entitled to her fees; rather, the court concluded the arbitrator's denial of fees to the prevailing party . . . , based solely on the arbitrator's belief he had discretion to do so, conflicted with the explicit and mandatory terms of the agreement, which provided that the prevailing party in an action arising from the agreement 'shall' recover fees." (*Moshonov, supra*, at p. 779.)  In contrast, the arbitrator in *Moshonov* "expressly based her decision on an interpretation of the contractual fees clause, according to which the clause did not apply to the action at hand.  Interpretation of the contract underlying [the] dispute being within the matter submitted to arbitration, such an interpretation could amount, at most, to an error of law on a submitted issue, which . . . is not in excess of the arbitrator's powers within the meaning of sections 1286.2 and 1286.6." (*Moshonov*, *supra*, at p. 779, citing *Moncharsh*, *supra*, 3 Cal. 4th at p. 28.)  Because the disputed issue of contractual interpretation in *Moshonov* "was committed to final adjudication by the arbitrator, rather than the courts," the court declined, "to consider the issue's merits," reasoning that "[r]egardless of whether the arbitrator's contractual interpretation and related ruling denying fees was legally correct, it was final and binding by agreement of the parties." (*Ibid.*)  As the court stated in *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787, the companion case to *Moshonov*, "Having submitted the fees issue to arbitration, plaintiffs cannot maintain the arbitrators exceeded their powers, within the meaning of section 1286.6, subdivision (b), by deciding it, even if they decided it incorrectly."

21

The parties do not discuss *Moshonov* and Defendants cite *DiMarco* for another proposition. Applying *Moshonov*, we determine whether the arbitrators' award of costs "in accordance with the California Code of Civil Procedure" "conflicted with the explicit and mandatory terms" of the costs provision or whether the costs provision is subject to an interpretation, "express or implied in the arbitrator's decision" according to which Plaintiffs would have been entitled to costs. (*Moshonov*, at p. 779.) If the latter, then the arbitrators have not exceeded their authority and the award of costs is not subject to correction by the trial court.

The parties dispute the meaning of the costs provision, which provides: "Each party to the arbitration shall pay such party's pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees, or other expenses incurred by a party for such party's own benefit." Plaintiffs contend "the clause is simply a directive as to how the neutral arbitrator gets paid, not a post-award prohibition against cost allocation" and argue that it does not preclude an award of costs. Defendants argue the costs provision required the parties to share the costs of the neutral arbitrator and otherwise bear their own costs and that it precluded both the arbitrators and the court from awarding costs.

As the parties observe, the costs provision is in harmony with section 1284.2 of our state arbitration act, which provides: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, *each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit*." (Italics added.)[13]

_____

[13] The only difference between the costs provision and the italicized language from the statute is that the costs provision substitutes the gender neutral phrase "for such

22

In supplemental letter briefs, both sides discuss *Maaso, supra,* 203 Cal.App.4th 362, a medical malpractice action that was submitted to arbitration pursuant to a written arbitration agreement. The arbitration agreement in *Maaso* contained the costs provision at issue this case. (*Id.* at p. 367.) The *Maaso* court did not interpret the costs provision, except to note that the language therein is "nearly identical" to section 1284.2 (*Id.* at p. 367, fn. 1.)

"As a general rule, ' "all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." ' [Citation.] However, laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." (*Swenson v. File* (1970) 3 Cal.3d 389, 393.) "As a general rule of construction, the parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made. These existing laws are considered part of the contract just as if they were expressly referred to and incorporated." (*Miracle Auto Center v. Superior Court* (1998) 68 Cal.App.4th 818, 821.)

As we have noted, the language of the costs provision tracks the wording of section 1284.2. When David Watson signed the Arbitration Agreement in 2002, case law interpreted section 1284.2 as requiring each side in a contractual arbitration to bear its own costs of the arbitration, absent an agreement that provides otherwise. In *Austin v. Allstate Insurance Co.* (1993) 16 Cal.App.4th 1812 (*Austin*), the court held that section 1284.2 "sets forth the legislative policy of this state that arbitration costs are to be borne by the party incurring them," thus, "requiring parties to bear their own costs in arbitration," "unless the arbitration agreement provides otherwise." (*Id.* at pp. 1815,

party's own benefit" in place of the phrase "for his own benefit" in section 1284.2, which does not affect the meaning of the costs provision.

1817; accord *Turner v. Superior Court* (1998) 67 Cal.App.4th 1432, 1438 [citing § 1284.2 & *Austin*]; see also *Woodard v. Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 664 (*Woodard*) [§ 1284.2 "excludes the costs of suit available to the prevailing party in the superior court pursuant to section 1032,[14] by expressly excluding counsel and witness fees and other expenses incurred by a party for his/her own benefit]; *Dickinson v. Kaiser Foundation Hospitals* (1980) 112 Cal.App.3d 952, 954 [affirming trial court order that refused to correct arbitration award that required each party to bear its own costs, reasoning that section 1284.2 required the appellant to bear his own costs and that section 1032 applied to actions in the superior court, not arbitration].) In accordance with this authority, the arbitrators could have interpreted the costs provision as requiring each side to bear its own costs, except for costs related to or authorized by the neutral arbitrator.

But was that requirement mandatory? Or was the costs provision, which was to be interpreted by the arbitrators, subject to another interpretation, express or implied, according to which Plaintiffs would have been entitled to costs? (*Moshonov*, *supra*, 22 Cal.4th at p. 779.) As we shall explain, the answer to the second question is "yes."

The arbitration award expressly allowed "costs in accordance with the California Code of Civil Procedure." Defendants argue that this means section 1284.2 and since that code section provides that each party will bear its own costs, the trial court did not have the power to augment the award "with a host of costs that were inconsistent with the terms of the agreement." Plaintiffs argue that costs are recoverable under a number of statutes, including section 998.

---

[14] Section 1032, which governs the recovery of costs in litigation, provides in relevant part: "(b) Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding. [¶] (c) Nothing in this section shall prohibit parties from stipulating to alternative procedures for awarding costs in the litigation pursuant to rules adopted under Section 1034."

24

Section 998 provides in relevant part: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] (b) Not less than 10 days prior to commencement of trial or *arbitration (as provided in Section 1281 or 1295)*[15] *of a dispute to be resolved by arbitration*, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. . . . [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. *In the case of an arbitration, the offer with proof of acceptance shall be filed with the arbitrator or arbitrators who shall promptly render an award accordingly.* [¶] (2) If the offer is not accepted prior to trial or *arbitration* or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or *arbitration.* [¶] . . . [¶] (d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or *award* in any action or proceeding other than an eminent domain action, the court *or arbitrator*, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial *or arbitration*, or during trial *or arbitration*, of the case by the plaintiff, in addition to plaintiff's costs." (Italics added.) The references to arbitration and arbitrators were added to section 998 in 1997. (*Pilimai v. Farmers Ins. Exchange Co*. (2006) 39 Cal.4th 133, 139 (*Pilimai*), citing Stats. 1997, ch. 892, § 1.)

Does the costs provision, which uses the language of section 1284.2, preclude an award of section 998 costs? The Supreme Court addressed the interplay between sections 1284.2 and 998 in *Pilimai*, *supra*, 39 Cal.4th 133, 136, an appeal from an order confirming an arbitration award in an uninsured motorist arbitration. One of the issues in

---

[15] Section 1295 governs arbitration agreements in medical malpractice cases.

*Pilimai* was whether the costs shifting provisions in section 998 apply to uninsured motorist arbitrations. (*Ibid.*) Citing section 1284.2 and *Austin*, *supra*, 16 Cal.App.4th 1812, the respondent insurer in *Pilimai* argued that such costs were not allowable under section 1284.2. (*Pilimai, supra,* 39 Cal.4th at p. 148.) The Supreme Court did not overrule *Austin*, but concluded that it was "distinguishable from [*Pilimai*] inasmuch as [*Austin*] concerned an award of costs pursuant to . . . section 1032" and *Pilimai* concerned "costs awarded pursuant to . . . section 998, which now authorizes the award of costs after an arbitration." (*Id.* at p. 149.) The court held that "once the conditions of Code of Civil Procedure section 998 are met, a defendant may be required to pay expert witness fees incurred during arbitration," as well as "those costs available under . . . section 1032, as enumerated in . . . section 1033.5" because the language of section 998, subdivision (d) requires " 'the defendant to pay a reasonable sum to cover [postoffer] costs of the services of expert witnesses, . . . , in addition to plaintiff's costs.' " (*Id.* at pp. 149-150.)

The court stated, "Moreover, all that . . . section 1284.2 says about the kinds of costs at issue here—'expenses incurred by a party for his own benefit'—is that such costs are not to be included in the costs that the parties are to share. Thus, . . . section 1284.2 does not conflict with . . . section 998, subdivision (d)'s authorization of arbitration plaintiffs under appropriate conditions to obtain costs incurred for their own benefit. And while it is true, as the *Austin* court observed, that no provision of the [California Arbitration Act] authorizes the award of arbitration costs absent agreement, . . . section 998 itself provides the statutory authorization for such costs." (*Pilimai*, *supra*, 39 Cal.4th at p. 150.) The court reasoned that the language of section 998, subdivision (d) "puts the arbitration plaintiff on the same footing as the plaintiff to a civil action vis-à-vis costs when the plaintiff has made an offer that the defendant has refused and obtains a judgment more favorable than the offer. Furthermore, nothing in the . . . legislative history [of section 998] indicates that the Legislature specifically intended costs to be

26

unavailable to arbitration plaintiffs." (*Id*. at pp. 150-151.) The court held that such costs "may include expert witness fees, and [the] costs related to deposition and exhibit preparation" that the plaintiff sought and remanded to the trial court to determine the proper costs award. (*Id.* at pp. 151-152.)

In summary, under the authorities in effect when the parties entered into the arbitration agreement, the costs provision provided that each side was to bear its own costs of the arbitration, except for costs related to the neutral arbitrator. On the other hand, although the Supreme Court did not overrule *Austin*, its analysis in *Pilimai* suggests a different interpretation of section 1284.2 under which Plaintiffs would have been entitled to costs. And, in any event, *Pilimai* instructs that Plaintiffs would have been entitled to their arbitration costs under section 998, subdivision (d). Since the costs provision is subject to an interpretation, "implied in the arbitrator's decision," according to which Plaintiffs would have been entitled to their costs, the arbitrators did not exceed their powers and the award was not subject to correction under section 1286.6, subdivision (b). (*Moshonov, supra,* 22 Cal.4th at p. 779.) "The recovery or nonrecovery of [costs] being one of the 'contested issues of law and fact submitted to the arbitrator[s] for decision' [citation] the arbitrator's decision was final and could not be reviewed for error." (*Id.* at p. 776.) Defendants asked the court to correct the award by deleting the award of costs. Since this case did not fall within any of the statutory grounds for correcting the award, the court erred when it granted Defendant's request. We turn next to Plaintiff's request that the court correct the award by determining the amount of costs.

### E. Plaintiffs' Request that the Court Determine the Amount of the Costs Award

Although Plaintiffs may have been entitled to costs pursuant to section 998, case law holds that they have forfeited that claim by failing to present it to the arbitrators.

27

As we have noted, both sides have filed supplemental letter briefs discussing *Maaso*, *supra*, 203 Cal.App.4th 362, an appeal from an order confirming an arbitration award in a medical malpractice case, which was decided after this case was fully briefed. The arbitration agreement in *Maaso* contained the same costs provision as the Arbitration Agreement in this case. (*Id.* at p. 367.) Similar to this case, the arbitrators in *Maaso* awarded the plaintiff costs and fees " 'in accordance with the arbitration agreement,' " but did not determine the amount of costs. (*Id.* at p. 369.) The plaintiff petitioned to confirm the award and asked the court to award section 998 costs and prejudgment interest (Civ. Code, § 3291). (*Ibid.*) The trial court confirmed the award, but denied the request for costs and interest. The appellate court affirmed and held that the plaintiff could not obtain an award of section 998 costs or Civil Code section 3291 prejudgment interest from the trial court because those issues were within the arbitrator's purview and the plaintiff never requested those enhancements from the arbitrators. (*Id.* at p. 377.)

Defendants argue the analysis in *Maaso* is correct and supports many of the points in their brief. Plaintiffs argue *Maaso* was wrongly decided and "interjects confusion into an area of law where clarity once reigned."

The plaintiff in *Maaso* advised the arbitrators that he had made a section 998 offer, without stating the amount of the offer, but failed to ask the arbitrators to rule on section 998 costs or seek to present evidence on the issue. (*Maaso*, *supra*, 203 Cal.App.4th at pp. 368-369.) "With knowledge of the rejected offer and that Maaso was the prevailing party, the arbitrators made no award of section 998 costs or section 3291 interest when issuing their final binding arbitration award. Instead, the award was for '[c]osts and fees in accordance with the arbitration agreement.' " (*Id.* at p. 377.) The appellate court observed that, as in this case, the medical malpractice complaint sought " 'damages according to proof, costs and all proper relief' " and that the parties "stipulated that 'the claims and controversies alleged in this action' were submitted to 'binding, contractual

28

arbitration.' " (*Ibid.*)  The appellate court concluded that "[b]ecause the submission was not limited, it included the issue of costs and interest . . . ." (*Ibid.*)

The *Maaso* court relied on *Corona*.  (*Maaso*, *supra*, 203 Cal.App.4th at pp. 377-378.)  The plaintiff in *Corona* prevailed at arbitration and was awarded compensatory damages.  The plaintiff petitioned the trial court to confirm the award and moved for an award of attorney fees and costs.  (*Corona*, *supra*, 107 Cal.App.4th at pp. 703-704.)  The trial court confirmed the award, but denied the request for fees and costs.  The issue on appeal, which the court described as one of first impression, was "where a party is required by contract to submit a dispute to binding arbitration, but does not request that the arbitrator decide his entitlement to attorney fees even though that issue was part of the submission, may a trial court nonetheless determine that issue and make an award of fees and costs incurred in the arbitration?" (*Id.* at pp. 703-704.)  The court answered that question in the negative and affirmed the trial court's denial of fees and costs.  (*Id.* at p. 704.)  The court explained that "because the parties' stipulation did not limit the issues to be resolved through arbitration, the issue of [the plaintiff's] entitlement to attorney fees and costs, as requested in his complaint, was subject to determination in arbitration proceedings." (*Id.* at p. 706.)  The plaintiff had admitted that he did not request that the arbitrator to decide the issue of his entitlement to attorney fees and costs.  He nonetheless argued that, "although a court cannot review an arbitrator's determination whether to award attorney fees, the court is permitted to determine the prevailing party and make an award of attorney fees and costs where the parties do not ask the arbitrator to make such determinations in the first instance even though the issue was within the scope of the contractual arbitration provision." (*Ibid.*)  The court rejected that contention and explained that "where parties have agreed their dispute will be resolved by binding arbitration, judicial intervention is limited to reviewing the award to see if statutory grounds for vacating or correcting the award exist.  [Citations.]  Under the statutory scheme, a party's failure to request the arbitrator to determine a particular issue within

29

the scope of the arbitration is not a basis for vacating or correcting an award. [Citations.] Unless a statutory basis for vacating or correcting an award exists, a reviewing court 'shall confirm the award as made . . . .' " (*Ibid.*)

*Corona* reasoned that "[s]uch an interpretation of the applicable statutes promotes the Legislature's determination that there is a ' "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] As a general rule, parties to a private arbitration impliedly, if not expressly, agree that the arbitrator's decision will be both binding and final and thus the arbitrator's decision 'should be the end, not the beginning, of the dispute.' [Citation.] Allowing a party to request that the trial court make an award that was within the scope of the arbitration but not pursued in that forum is inconsistent with the policies underlying the statutory private arbitration scheme." (*Corona, supra,* 107 Cal.App.4th at p. 706.)

The *Maaso* court rejected the plaintiffs' argument that "because section 998 uses the language 'the *court or arbitrator,*' either the court or the arbitrator may award section 998 cost enhancements following an arbitration." (*Maaso*, *supra*, 203 Cal.App.4th at p. 378.) The court reasoned, "that was not the Legislature's intent in amending section 998. '[S]ection 998 was amended [in 1997] to extend its provisions to actions resolved by arbitration'; the amendment was ' "simply to extend existing provisions [of section 998] to include costs incurred in arbitration." ' [Citation.] . . . 'The statute's language is parallel:  what the court can do, the arbitrator can also do. The most logical way to read this parallel language is that in cases tried to the court, the court makes the decisions about awarding [section] 998 costs connected with the case, while in cases that are arbitrated, those decisions belong to the arbitrator. It is not logical to read the statute as inviting a procedure that permits a party to forum shop between the court and the arbitrator, and to bring the request to whichever forum that party believes is most likely to make a favorable award.' " (*Id.* at pp. 378-379; *Pilimai, supra,* 39 Cal.4th at p. 139 [year of amendment].)

30

*Maaso* also reasoned that "it makes sense that only the arbitrator decides section 998 costs incurred in arbitration because an award of expert witness costs, and the amount, is discretionary under section 998. '[N]ot only is the determination as to the amount [of attorney fees and costs] properly within the purview of the arbitrator, but we observe it is the arbitrator, not the trial court, which is best situated to determine the amount of reasonable attorney fees and costs to be awarded for the conduct of the arbitration proceeding.' " (*Maaso*, *supra*, 203 Cal.App.4th at p. 379, quoting *DiMarco, supra,* 31 Cal.App.4th at pp. 1816-1817; see also § 998, subd. (d) ["arbitrator in its discretion may require the defendant to pay a reasonable sum to cover postoffer" expert witness costs].)  A review of Plaintiffs' cost bill illustrates the wisdom of this conclusion. Plaintiffs' costs claim included expert witness costs pursuant to section 998, which totaled $32,639.34.  Plaintiffs retained eight expert witnesses, seven of which testified at the arbitration.  Plaintiff's economist charged $2,500 for one hour of testimony.  Another expert charged $4,555 for travel time, airfare, and other travel expenses.  Presumably, Defendants would have challenged these amounts on the grounds of reasonableness, both as to the number of experts used and the amounts charged.  The arbitrators, who heard all the expert testimony and determined the merits of the case, were in the best position to determine the reasonableness of Plaintiffs' expert witness costs.  The court, on the other hand was at a disadvantage, not having heard the merits of the case.

Plaintiffs argue this case is distinguishable from *Maaso* because unlike the plaintiff in *Maaso*, who advised the arbitrators that he had made a section 998 offer that had been rejected, Plaintiffs did not mention their 998 offer at arbitration.  (*Maaso*, *supra*, 203 Cal.App.4th at p. 368.)  In our view, this factual difference between this case and *Maaso* does not alter our analysis.

Plaintiffs argue that to have disclosed their 998 offer in arbitration "would have invited the arbitration equivalent of a new trial motion and provided grounds for appeal in the event of a favorable award," since section 998, subdivision (b)(2) prohibits evidence

of a 998 offer at trial or arbitration. That subdivision provides: "If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration." (§ 998, sub. (b)(2).) The Supreme Court rejected Plaintiffs' assertion long ago in *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870 (*White*), superseded by statute on another ground as stated in *Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 596. The *White* court stated "that language refers to the trial upon the liability which the offer proposed to compromise" and held that section 998, subdivision (b)(2) "bar[s] the introduction into evidence of an offer to compromise a claim for the purpose of proving liability for that claim," but "permit[s] its introduction to prove some other matter at issue." (*White, supra*, at pp. 888-889.) Accordingly, in this case, section 998, subdivision (b)(2) barred the introduction of the 998 offer to prove Defendants' liability for malpractice, but permitted its introduction on the issue of costs. In *White*, the court approved a procedure whereby the trial court bifurcated the trial and admitted the 998 offer into evidence in the second phase of the trial, which did not involve the liability that the 998 offer proposed to compromise. (*Id.* at p. 889.)

Plaintiffs assert that the holding in *Maaso* is unworkable for a number of reasons. Plaintiffs argue: "Evidence of the amount of post-998 costs is not going to be available until <u>after</u> the experts have testified at the arbitration and submitted their final bills. Are both parties to the arbitration required by *Maaso* to put on evidence of their costs in anticipation of a favorable award? Evidence of costs is not material or relevant until after an arbitration award is confirmed and judgment is entered. Does *Maaso* contemplate that after the arbitration award, the arbitrators reconvene to determine the amount of the prevailing party's costs? If so, this procedure for obtaining a judgment with a specific cost amount is not described in any appellate case, statute or Rule of Court. It is a unique construct of the *Maaso* court."

32

Nothing prevented the parties from bifurcating the issue of costs, as suggested in *White*. They could have asked the arbitrators to issue an interim award on liability and damages and to reserve jurisdiction to entertain their costs claim. Bifurcated proceedings are not unusual in arbitration. (*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1437 (*Hightower*) [arbitrator may issue partial or interim award and reserve jurisdiction to issue final award on remaining issues; incremental award process is within broad scope of arbitrator's authority to fashion appropriate remedy]; see e.g., *Cable Connection*, *supra*, 44 Cal.4th 1341-1342 [question whether parties' agreement permitted class-wide arbitration bifurcated and addressed first]; *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1105-1106 [arbitrator awarded attorneys' fees and costs and retained jurisdiction to issue a "supplemental award" determining the amount of costs following receipt and analysis evidence on the costs issue].) In addition, the JAMS rules authorized the arbitrators to make "interim or partial rulings, orders or Awards." (JAMS Rules, rules 24(d).) Contrary to Plaintiffs' suggestion, these concepts are not new: *Corona* was decided in 2003; *Hightower* in 2001, and *Britz* in 1995. (*Corona*, *supra*, 107 Cal.App.4th 701; *Hightower*, *supra*, 86 Cal.4th 1415; *Britz*, *supra*, 34 Cal.App.4th 1085.) And at least one treatise cautions that in cases involving 998 offers, "[t]he arbitrator must be informed, however, of the rejected . . . 998 offer prior to making a final award in order to impose any applicable 'penalties.' " (Knight, et al., California Practice Guide: Alternative Dispute Resolution (The Rutter Group 2012) ¶ 5:402.14, p. 5-275.) "[A]rbitrators should determine before making a final award *whether* either party rejected a [section] 998 offer from the other (without considering who made the offer or the amount). If such an offer was made, at the conclusion of the evidentiary hearing, the arbitrator should expressly reserve jurisdiction to augment or withhold costs pursuant to [section] 998." (*Id.* at ¶ 5:402.15, p. 5-276.)

Addressing Plaintiffs' arguments that *Maaso's* holding is unworkable, we suggest the following procedure in a cases involving section 998 costs claims that have been

33

submitted to arbitration. The parties should advise the arbitrator that a 998 offer has been made, without disclosing the amount of the offer or who made the offer, and ask the arbitrator to conduct a bifurcated hearing. After the liability and damages phase of a bifurcated arbitration is completed, the arbitrator could issue an interim award on the questions of liability and damages and reserve jurisdiction to award section 998 costs, if applicable. The parties could then agree to a briefing schedule for the second phase of the arbitration and submit evidence and argument on the question of section 998 costs. This would allow parties claiming costs time to collect any additional evidence needed, including final bills from their expert witnesses reflecting the costs of appearing at the first phase of the arbitration. In answer to the question whether both sides would be required to put on evidence of their costs in anticipation of a favorable award, in a typical case, only the party or parties claiming they obtained an award more favorable than that party's 998 offer would be required to put on evidence of any costs claimed. The parties could stipulate to the use of the Judicial Council memorandum of costs forms and a briefing schedule that would allow for challenges to the costs claimed similar to that applicable to motions to tax costs. There is nothing about the procedures for claiming or challenging costs that could not be handled in an arbitration hearing. We therefore reject Plaintiffs' suggestion that the holding in *Maaso* is unworkable.

Plaintiffs' reliance on *Caro*, *supra*, 59 Cal.App.4th 725, in support of their section 998 costs claim is misplaced. The costs at issue in *Caro* were statutory costs related to the proceedings in the trial court (§ 1293.2), which we address under another heading. As the court stated in a footnote, "Caro [did] not seek to recover costs she incurred *in* arbitration" and had "abandoned on appeal her request for $6,315 in expert witness fees." (*Caro, supra*, at p. 738, fn. 7.)

Finally, we note that the court in *Pilimai*, after determining that the plaintiff was entitled to section 998 costs, directed that the case be remanded to the trial court to determine the proper costs award consistent with the views expressed in its opinion.

(*Pilimai*, *supra*, 39 Cal.4th at p. 152.) *Maaso, supra,* 203 Cal.App.4th 362, 379, distinguished *Pilimai,* reasoning that the court in *Pilimai* "was not called upon to decide whether it was for the court or the arbitrator to make an award of section 998 costs," citing *Styne v. Stevens* (2001) 26 Cal.4th 42, 57 ("[a]n opinion is not authority for a point not raised, considered, or resolved therein."). We agree with *Maaso* on this point.

For these reasons, we agree with *Maaso* and hold that Plaintiffs were not entitled to section 998 costs in the trial court because they never requested them from the arbitrators. But as we shall explain in the next section, we are not persuaded that *Maaso* is correct regarding prejudgment interest.

### IV. *Prejudgment Interest Under Civil Code Section 3291*

Civil Code section 3291 provides that if a plaintiff in a personal injury "action" makes a 998 offer, which is rejected by the defendant, and then obtains a "judgment more favorable than the offer, the plaintiff is entitled to interest on the judgment from the date of the offer, rather than from the date of the judgment.[16] For ease of reference we shall hereafter refer to this as "section 3291 interest."

In *Caro*, the appellate court affirmed a trial court order awarding the plaintiff section 3291 interest. (*Caro*, *supra*, 59 Cal.App.4th at pp. 728, 736.) The court explained, "Prejudgment interest was properly imposed in this true arbitration based on Caro's recovery of a more favorable 'judgment' than her statutory offer. (Civ. Code,

---

[16] Civil Code section 3291 provides in relevant part: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent . . . , it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 . . . which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

§ 3291.)  While the arbitrator's award was not a 'judgment' within the meaning of Civil Code section 3291, the trial court's judgment pursuant to . . . section 1287.4 clearly was.  [Section 1287.4] provides, 'If an award is confirmed, judgment shall be entered in conformity therewith.  The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action . . . .' " (*Caro*, at p. 736; see also *Weinberg v. Safeco Ins. Co. of America* (2004) 114 Cal.App.4th 1075, 1084-1085 [following *Caro*].)  *Caro* distinguished *Woodard*, *supra*, 171 Cal.App.3d 656, where the arbitrators denied section 3291 interest, leaving the court powerless to redetermine the issue.  (*Caro*, at p. 737.)

Defendants argue that plaintiff could only recover section 3291 interest by seeking and obtaining it from the arbitrators.  This contention is incompatible with the plain language of the statute, which, unlike section 998, makes no reference to arbitration or an arbitration award, but instead plainly refers to a "judgment" more favorable than the 998 offer.  Nor is there any reason to suppose that arbitrators would be in any better position to make such an award than a court ruling on a petition to confirm their award.  Civil Code section 3291 only applies to personal injury actions, in which the award and ensuing judgment will invariably take the form of a monetary assessment.  The critical determination—whether the award is more favorable than the 998 offer—is a simple matter of comparing numbers.  It is therefore difficult to find any policy reason for insisting that the interest award be made by the arbitrators.  Coupled with the statute's failure to allude to any such possibility, this fact seems to defeat Defendants' argument.

Although Plaintiffs may have been entitled to section 3291 interest, as we shall explain, Plaintiffs forfeited this claim by failing to raise it in their petition below.

*V.  Forfeiture*

Defendants argue that Plaintiffs have forfeited their claim to section 3291 interest and section 998 costs by failing to claim them in their petition to confirm the arbitration award.

36

Plaintiffs' Judicial Council form petition to confirm the award requested "interest" from March 16, 2010, the date of the 998 offer, and "costs" "according to proof." But neither their petition nor their points and authorities set forth the statutory or factual basis for an award of section 3291 interest or section 998 costs. Their papers did not mention section 3291, section 998, the 998 offer, Defendants' rejection of the offer, or receipt of an award in excess of the offer. Plaintiffs did not present any evidence that supported an award of section 3291 interest or section 998 costs. The first document that contained any mention of section 998 was Plaintiffs' memorandum of costs, which was filed after the court ruled on the petition to confirm. It was not until they filed their motion for reconsideration that Plaintiffs claimed that they were entitled to interest from the date of their 998 offer or cited section 3291. Since other statutes authorize awards of interest, (see e.g., Civ. Code, §§ 3287-3289.5), we cannot say Plaintiffs preserved their claim for section 3291 interest by simply checking the box requesting "interest" on their form petition.

On this record, we are constrained to hold that the trial court erred when it failed to award section 3291 interest in its order confirming the arbitration award. By failing to raise this claim in their petition below, Plaintiffs have forfeited it on appeal. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826.) "[A]n appellate court will ordinarily not consider procedural defects or erroneous rulings where an objection could have been, but was not raised below. [Citation.] The policy behind the rule is fairness. 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' " (*Ibid.*)

The same rationale supports the conclusion that Plaintiffs forfeited their claim to section 998 costs by failing to request them in their petition to confirm the arbitration award. The claim has been doubly forfeited since Plaintiffs failed to request 998 costs from the arbitrators and failed to request them in their petition to confirm the award.

37

### VI. Propriety of Order on Motion for Reconsideration

As we have noted, we review the court's order on the motion for reconsideration for an abuse of discretion. (*Lucas, supra,* 39 Cal.App.4th at p. 1027.) " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 364, p. 420; see *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' (*City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1297-1298.) To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).) Accordingly, we determine whether we have sufficient confidence in what the trial court did to defer our consideration to its decision.

In this case, we consider whether the trial court properly exercised its discretion when it denied Plaintiffs' motion for reconsideration. The trial court's discretion in this regard is circumscribed by the statutes and case law governing such motions and must be exercised within the limits the law permits.

To prevail on a motion for reconsideration, the moving party must not only introduce some fact or circumstance not previously considered, but must also provide a satisfactory explanation for failing to present the information at the first hearing.

(§ 1008; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690.) A motion for reconsideration is properly denied if it is based on evidence that could have been presented in connection with the original motion. (*Hennigan v. White* (2011) 199 Cal.App.4th 395, 406.) Since Plaintiffs were aware of the 998 offer and their rejection of the offer, there is no reason that information could not have been presented in their petition to confirm the arbitration award. In addition, reconsideration cannot be granted based on Plaintiffs' claim that they did not intend to waive oral argument on the petition to confirm, since that is not " 'new' " or " 'different' " matter. (*Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500.) Since Plaintiffs' motion did not meet the legal requirements for reconsideration, we conclude the trial court did not abuse its discretion when it denied the motion for reconsideration.

## VII. *Costs Related to Judicial Proceedings in the Trial Court*

In addition to arbitration costs, Plaintiffs' memorandum of costs claimed costs related to proceedings in the superior court, including the following filing and motion fees: $320 for their complaint, $355 for the petition to confirm the arbitration award, and a $40 "[m]otion hearing fee" for the petition to confirm.

The Legislature has carefully distinguished between costs incurred in arbitration proceedings and costs incurred in arbitration-related proceedings in the superior court. (*Austin*, *supra*, 16 Cal.App.4th at pp. 1815-1816; *Woodard*, *supra*, 171 Cal.App.3d at p. 665.) Section 1293.2 provides that "[t]he court shall award costs upon any judicial proceeding under this title," referring to title 9 of part 3 of the Code of Civil Procedure, the California Arbitration Act. "A court must award costs in a judicial proceeding to confirm, correct or vacate an arbitration award." (*Corona, supra,* 107 Cal.App.4th at p. 707, citing § 1293.2 & *Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 260 (*Carole Ring*) [judicial proceedings subject to § 1293.2 include petition to vacate award, appeal of order on petition, & trial court proceedings on remand].) Determining which party, if any, is the prevailing party in post-arbitration proceedings is

a judicial function distinct from the arbitrator's decision to award or not award costs and fees in the arbitration proceeding itself. (*Carole Ring, supra*, at pp. 260-261.) Thus, while the costs incurred in the arbitration were controlled by the Arbitration Agreement and were subject to resolution in the arbitration proceedings, costs incurred to enforce the arbitration award were not. Pursuant to the statutory scheme, Plaintiffs may be entitled to costs incurred in the judicial proceedings to correct and confirm the arbitration award and, for this reason, the court erred in denying their request for costs in its entirety. (*Corona, supra,* at p. 707.)

In *Caro, supra,* 59 Cal.App.4th 725, 738, the appellate court held that the prevailing party was entitled to post-arbitration costs, even though the trial court had inexplicably omitted such costs from its order, and modified the order to award those costs. Since the determination of the prevailing party for the purpose of section 1293.2 costs is within the discretion of the trial court, and since Defendants reserved the right to challenge the propriety of amounts claimed in the costs bill, and the costs bill did not include costs of the motion for reconsideration, we remand this matter for the limited purpose of determining the amount of costs to be awarded for the arbitration-related proceedings in the trial court.

Regarding the filing fee for the complaint, in their stipulation to binding arbitration, the parties agreed "[e]ach side to bear [its] own costs and attorney's fees." In our view, this stipulation precludes recovery of any costs incurred prior to the date of the stipulation, including the filing fee for the complaint. In addition, the filing of the complaint was not a "judicial proceeding" under the Arbitration Act. (§ 1293.2)

### DISPOSITION

The judgment is reversed. The case is remanded to the trial court for the sole purpose of determining Plaintiffs' entitlement to costs related to the proceedings in the trial court and the amount of such costs. Each side is to bear its own costs on appeal.

_____
RUSHING, P.J.

WE CONCUR:


_____
PREMO, J.


_____
ELIA, J.

41